**NORTHEAST COUNCIL ON SUBSTANCE ABUSE, INC., Appellant,**

**v.**

**IOWA DEPARTMENT OF PUBLIC HEALTH, DIVISION OF SUBSTANCE ABUSE, Appellee,**

**and**

**Covenant Medical Center, Intervenor–Appellee.**

No. 93–424.

Supreme Court of Iowa.

March 23, 1994.

Roberta Rae Gilbert of Zanville & Zimmermann, Iowa City, for appellant.

Bonnie J. Campbell, Atty. Gen., Julie Pottorff, Sp. Asst. Atty. Gen., and Maureen McGuire, Asst. Atty. Gen., for defendant-appellee.

Edwin W. McIntosh of Dorsey & Whitney, Des Moines, for intervenor-appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, LAVORATO, and NEUMAN, JJ.

LAVORATO, Justice.

At issue in this appeal is whether prior grant applications for public funds are confidential records under Iowa's freedom of information act. *See* Iowa Code ch. 22 (1991). The district court did not think so and refused to enjoin their release to a competitor of the entity seeking the funds. We agree and affirm.

Northeast Council on Substance Abuse, Inc. (NECSA) is a small nonprofit substance abuse treatment facility. Its primary office is in Waterloo. Incorporated in 1967, NECSA employs forty-one people. About 75% of NECSA's annual funding comes through grants from various state programs.

Covenant Medical Center (Covenant) is a large privately owned medical center. It, too, is in Waterloo. Covenant is one of Iowa's larger community hospitals, with 1600 employees. Among other things, Covenant provides treatment services for alcohol and substance abuse.

The Iowa department of public health, division of substance abuse (department) awards grants for substance abuse prevention and treatment services on a yearly basis after reviewing annual applications. Only one entity in each geographical area of the state may receive the annual grant.

The record reveals that NECSA has been the sole recipient of this grant money in the northeast Iowa region for the last twenty years. During the last ten years, NECSA was the only applicant for these funds. As current recipient of the grant, NECSA was awarded $600,000.

The State attaches conditions to the grant. One is that an independent audit of the recipient has to be performed annually. Another

is that the prior years' independent audit reports and compliance reports for NECSA are public records.

The dispute underpinning this appeal arose when NECSA and Covenant both indicated to the department their intention to apply for the grant funds covering the 1993–94 contract year. About eleven days before the grant application deadline, NECSA learned that (1) Covenant had asked the department for copies of NECSA's past grant applications and (2) the department intended to release this information as public records.

The prior grant applications include, among other things, (1) descriptions of the number of people served, (2) the areas served, (3) an analysis of the need for the services in the area to be served, (4) NECSA's philosophy or vision for meeting this need, (5) the allocation of staff hours to various programs and services, (6) staff salaries, (7) the amounts and specific sources of revenue NECSA has received, (8) detailed information about the design and implementation of the various programs and services it offers, (9) a specific design of NECSA's functions and how its budgetary lines tie to those functions, and (10) information relating to services and programs addressed in NECSA's current application.

NECSA immediately filed a petition for a temporary restraining order and a writ of temporary and permanent injunction. *See* Iowa Code § 22.8. NECSA sought to enjoin the department from releasing NECSA's past grant applications to Covenant on the grounds that such documents are confidential. *See* Iowa Code §§ 22.7(6) and 22.8. Covenant intervened, asserting that NECSA's past grant applications are public records under Iowa Code chapter 22 and should be released.

After a hearing, the district court denied NECSA's petition in its entirety. It is from this adverse ruling that NECSA appeals.

■ Our review for actions brought under Iowa Code chapter 22 is de novo. *KMEG Television, Inc. v. Iowa State Bd. of Regents*, 440 N.W.2d 382, 384 (Iowa 1989).

■ This court has interpreted Iowa Code chapter 22 and its predecessor, Iowa Code chapter 68A, in several cases. These cases have established a number of principles. First, Iowa Code chapter 22 is Iowa's freedom of information statute. *Des Moines Register & Tribune Co. v. Osmundson*, 248 N.W.2d 493, 501 (Iowa 1976). Second, Iowa Code section 22.2(1) insures that "[e]very person shall have the right to examine and copy public records and to publish or otherwise disseminate public records or the information contained therein." From this we discern that the statute's purpose is "to open the doors of government to public scrutiny— to prevent government from secreting its decision-making activities from the public, on whose behalf it is its duty to act." *Iowa Civil Rights Comm'n v. City of Des Moines*, 313 N.W.2d 491, 495 (Iowa 1981). Third, the statute "establishe[s] a liberal policy of access from which departures are to be made only under discrete circumstances." *City of Dubuque v. Telegraph Herald, Inc.*, 297 N.W.2d 523, 526 (Iowa 1980). Fourth, there is a presumption in favor of disclosure. *Id.* at 527. Fifth, the specific exemptions in section 22.7 are to be construed narrowly. *Id.* But this "narrow" construction principle is subject to two caveats. Overutilization of the principle could easily thwart rather than promote the legislative intent underlying section 22.7. And where the legislative exception is broadly inclusive, the "narrow" construction rule does not aid in ascertainment of the legislature's intent. *City of Sioux City v. Greater Sioux City Press Club*, 421 N.W.2d 895, 897 (Iowa 1988). Last, the statute provides a procedure—independent of the section 22.7 exceptions—for injunctive relief against disclosure in a carefully circumscribed area. *City of Dubuque*, 297 N.W.2d at 528.

■ An exception in section 22.7 pertinently provides:

The following public records shall be kept confidential, unless otherwise ordered by a court, by the lawful custodian of the records, or by another person duly authorized to release such information:

. . . .

6. Reports to governmental agencies which, if released, would give advantage to competitors and serve no public purpose.

It is this exception that NECSA relied on in the district court and relies on here.

The district court rejected NECSA's claim that its past grant applications were confidential reports within the meaning of section 22.7(6). In rejecting this claim, the court succinctly stated:

> The court finds that the documents requested are not confidential as they fail to meet the definition of reports as set out in Iowa Code section 22.7(6) (1991). While release may give advantage to competitors, it also serves the public purpose of making the application [process] more open and competitive.

For reasons that follow, we agree.

Our Iowa court of appeals recently addressed a similar issue. *See Craigmont Care Ctr. v. Iowa Dep't of Social Servs.*, 325 N.W.2d 918 (Iowa App.1982) (per curiam). In *Craigmont,* a number of nursing homes sought an injunction to prevent the Iowa department of social services from releasing to the news media cost reports filed by the nursing homes in connection with their receipt of Medicaid payments. Like NECSA, the nursing homes claimed their cost reports were confidential reports within the meaning of Iowa Code section 68A.7(6), the forerunner of section 22.7(6). Section 68A.7(6), like section 22.7(6), made confidential "[r]eports to governmental agencies which, if released, would give advantage to competitors and serve no public purpose."

The district court—in *Craigmont*—determined

> that although competitors could gain an advantage because of the information contained in the cost reports, the public purpose to be served warranted disclosure of the cost reports.

*Id.* at 920. In support of this conclusion, the district court noted specific areas of strong public interest in the information contained in the cost reports:

> [t]he public is interested in knowing the cost of care for Medicaid recipients; the public is interested in knowing the difference between the cost of care for a contracted Medicaid patient as opposed to the cost of a person paying for such care with private funds; the tax-paying public has a strong general interest in governmental spending; and people receiving Medicaid payments while in these nursing home facilities and those preparing to select nursing homes need full information to make informed decisions.

*Id.* at 920–21.

The court of appeals agreed that the strong public interests discerned by the district court were legitimate and compelled a conclusion that public disclosure of the cost reports was warranted. *Id.* at 921. In the court of appeals' view, these public interests overshadowed any advantage that competitors might derive from access to the cost reports. *Id.*

Turning to the exception in section 22.7(6), we note that NECSA must prove two things: the past application grants would give advantage to NECSA's competitors *and* their release would serve *no* public purpose. Covenant concedes—as it must—that it is a competitor. It is also clear from the record that the past grant applications would give Covenant an economic advantage. This is so because much of the information in these applications would be useful to Covenant and would cost it money, time, and effort to duplicate. *See U.S. West Communications, Inc. v. Office of Consumer Advocate*, 498 N.W.2d 711, 714–15 (Iowa 1993) (information kept secret that would be useful to a competitor and require cost, time, and effort to duplicate is of economic advantage to a competitor).

The "no public purpose" requirement, however, is more difficult to prove. And upon our de novo review of the record we are convinced that the release of the past grant applications would indeed serve a public purpose. We agree with Covenant that the public interests in this case parallel those in *Craigmont.*

Public funds—some $600,000—are involved. In *Des Moines Independent Community School District v. Des Moines Register & Tribune Co.*, 487 N.W.2d 666, 669

(Iowa 1992), the fact that public funds were involved convinced this court that a settlement agreement between a school district and school principal was not confidential under one of the section 22.7 exceptions.

Because public funds are involved here, the public has a right to know how those funds have been spent—what services were provided for these funds and how efficiently the funds were spent. Information in these past grant applications would allow the public to determine whether the grants were properly awarded in the first place. Those patients receiving substance abuse treatment need adequate information to make informed decisions about treatment programs. The same can be said about those preparing to choose a treatment program.

Contrary to NECSA's contention, we think its public audit reports and compliance reports—which are summary in nature—would not give the public the same information contained in the full grant applications. One important example is the salary information. The audits do not list salaries separately. The grant applications do. Knowing what types of salaries are being paid would certainly allow the public to judge for itself whether the salaries are exorbitant.

We agree with Covenant and the district court that releasing NECSA's past grant applications would serve a public interest by making the bidding process more competitive. Introducing competition where none has existed for ten years would give the State more choices from which to select the best substance abuse treatment provider. If another provider convinces the State it can furnish more and better services at the same cost, the public benefits.

■ In oral argument NECSA's counsel conceded that if the news media were seeking the past grant applications, the media would probably be entitled to view the applications. Essentially, this is a concession of public interest. We reject NECSA's contention that release of the applications should depend on the status of the party seeking them. Such a procedure is impracticable and is nowhere supported by statutory language.

What we have here are competing policy interests: the public's right to know versus protecting an entity against a competitor. We repeat that it is not our responsibility to balance competing policy interests. This balancing is a legislative function and our role is simply to determine the legislature's intent about those policy issues. *City of Sioux City*, 421 N.W.2d at 897. In this instance, the legislature has drawn the exception to confidentiality narrowly by requiring a showing that no public purpose is served by public disclosure. So we construe section 22.7 narrowly. *Id.*

■ Like the district court, we also reject NECSA's reliance on Iowa Code section 22.8. That section allows the district court—independent of the section 22.7 exceptions—to enjoin examination of public records provided (1) the examination would clearly not be in the public interest; and (2) the examination would substantially and irreparably injure any person or persons.

We have already found in our de novo review that there are public interests to overcome the exception in section 22.7. We find these same public interests are strong enough to support a denial of an injunction under section 22.8. In so finding, we are mindful the NECSA has to prove that the examination would not be in the public interest by clear and convincing evidence. Iowa Code § 22.8(3). We are also mindful that section 22.8(3) requires that in deciding whether injunctive relief should be granted, we must

> take into account the policy of [chapter 22] that free and open examination of public records is generally in the public interest even though such examination may cause inconvenience or embarrassment to public officials or others.

We also agree with the district court that NECSA has failed to show by clear and convincing evidence that allowing an examination of the past grant applications would substantially and irreparably injure NECSA or any other persons. NECSA never proved the alleged injury quantitatively. In addition, by its own admission NECSA had no fear that it would lose the grant if the past grant applications were allowed to be exam-

ined. It felt it could still provide better and more efficient services than its competitor.

Because we conclude that NECSA's past grant applications are subject to disclosure under the provisions of Iowa Code chapter 22, we affirm the district court's ruling which reached the same conclusion.

**AFFIRMED.**