Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/18/2018 09:10 AM CDT

AKSAMIT RESOURCE MANAGEMENT LLC ET AL., APPELLANTS,
v. NEBRASKA PUBLIC POWER DISTRICT, APPELLEE.

___ N.W.2d ___

Filed February 23, 2018.    No. S-17-333.

1. **Statutes: Appeal and Error.** Statutory interpretation is a question of law that an appellate court resolves independently of the trial court.
2. **Mandamus: Words and Phrases.** Mandamus is a law action, and it is an extraordinary remedy, not a writ of right.
3. **Judgments: Appeal and Error.** In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict, and an appellate court will not disturb those findings unless they are clearly erroneous.
4. **Mandamus.** Whether to grant a writ of mandamus is within the trial court's discretion.
5. **Legislature: Statutes: Intent: Records.** In enacting the public records statutes, the Legislature has determined that the welfare of the people is best served through liberal public disclosure of the records of the three branches of government.
6. **Legislature: Statutes: Intent: Records: Public Policy.** Because the Legislature has expressed a strong public policy for disclosure, an appellate court must narrowly construe statutory exemptions shielding public records from disclosure.
7. **Mandamus: Proof.** A party seeking a writ of mandamus under Neb. Rev. Stat. § 84-712.03 (Reissue 2014) has the burden to satisfy three elements: (1) The requesting party is a citizen of the state or other person interested in the examination of the public records, (2) the document sought is a public record as defined by Neb. Rev. Stat. § 84-712.01 (Reissue 2014), and (3) the requesting party has been denied access to the public record as guaranteed by Neb. Rev. Stat. § 84-712 (Reissue 2014).
8. ____: ____. If the public body holding the record wishes to oppose the issuance of a writ of mandamus under Neb. Rev. Stat. § 84-712.03 (Reissue 2014), the public body must show, by clear and conclusive evidence, that the public record at issue is exempt from the

- 115 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
299 NEBRASKA REPORTS
AKSAMIT RESOURCE MGMT. v. NEBRASKA PUB. POWER DIST.
Cite as 299 Neb. 114

disclosure requirement under one of the exceptions provided by Neb. Rev. Stat. § 84-712.05 (Cum. Supp. 2016) or Neb. Rev. Stat. § 84-712.08 (Reissue 2014).

9. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

10. **Statutes: Legislature: Intent.** In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.

11. **Statutes.** It is not within the province of the courts to read a meaning into a statute that is not there or to read anything direct and plain out of a statute.

12. **Statutes: Words and Phrases.** Generally, if an exception is expressed in the conjunctive, both requirements must be met for the exception to become operative.

13. **Public Purpose: Intent.** A public purpose has for its objective the promotion of the public health, safety, morals, security, prosperity, contentment, and the general welfare of all the inhabitants.

Appeal from the District Court for Platte County: ROBERT R. STEINKE, Judge. Reversed and remanded with direction.

Roger P. Cox, P.C., L.L.O., and Peter S. Ratner, of Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C., for appellants.

Shawn D. Renner, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., and John C. McClure, of Nebraska Public Power District, for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, KELCH, and FUNKE, JJ.

CASSEL, J.

## INTRODUCTION

Nebraska Public Power District (NPPD) refused a public records request[1] from potential competitors for documents

---

[1] See Neb. Rev. Stat. §§ 84-712, 84-712.01, and 84-712.03 to 84-712.09 (Reissue 2014 & Cum. Supp. 2016).

showing cost and revenue information for each of its generation units, and the district court declined to issue a writ of mandamus to compel disclosure. The competitors' appeal turns on the statutory exception for "proprietary or commercial information which if released would give advantage to business competitors *and serve no public purpose*."[2]

Does the statute require public records useful to an energy policy debate to be released despite an advantage flowing to a competitor? The words chosen by the Legislature dictate that the answer must be "yes." We cannot say the result is absurd. Accordingly, we reverse the district court's order and direct issuance of an appropriate writ.

## BACKGROUND

### PARTIES

Aksamit Resource Management LLC and First Security Power, LLC, are limited liability companies that were formed under the laws of Nebraska and have headquarters in Nebraska. Gary Aksamit is the chief executive officer of both companies (collectively Aksamit). Aksamit intends to produce and sell electricity in Nebraska in the near future.

NPPD is a public corporation and a political subdivision of Nebraska. It has facilities for generation, transmission, and distribution of electric power and energy for sale at retail and wholesale. NPPD has several different types of generation sources: conventional steam electric generation, which generates heat from fossil fuel; steam nuclear generation, which generates heat from nuclear fission; combined cycle and combustion turbine generation, which generates heat from the combustion of natural gas; hydro facilities, which generate power from water; diesel facilities, which use diesel engines to produce electricity; and wind facilities, where the mode of force for the generator is wind.

---

[2] § 84-712.05(3) (emphasis supplied).

- 117 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
AKSAMIT RESOURCE MGMT. v. NEBRASKA PUB. POWER DIST.
Cite as 299 Neb. 114

### Requests for Public Records
### and Response

In March 2016, Aksamit sent to NPPD 22 requests for public records. NPPD provided documents to satisfy the vast majority of the requests. This appeal concerns only three requests:

- "documents sufficient to show actual expenditures and revenues by cost and profit centers for each year from 2008 through 2015";
- "each and any document dated January 1, 2013[,] or later that contains, reflects, or constitutes a six-year rate outlook by cost and profit centers"; and
- "documents sufficient to show the annual generation output and revenue for each [NPPD] generation resource, owned or cont[r]acted from 2008 through 2015."

NPPD refused to provide records responsive to those requests and asserted that the requested information was exempt from public disclosure under § 84-712.05(3).

### Petition for Writ
### of Mandamus

Aksamit filed a petition for writ of mandamus. It alleged that disclosure of the requested information would serve a public purpose, because the citizens of Nebraska "have an indisputable interest in knowing the operational and financial details associated with state-owned electrical utilities so that they may evaluate, among other things, the continued viability of public power in Nebraska."

The district court ordered NPPD to either promptly provide access to the records or, alternatively, to file an answer showing cause why it declined to provide access to the records. In an answer, NPPD maintained that the requested documents fell within the exemption in § 84-712.05(3).

### Trial

At trial, Aksamit focused on public purposes that would be served by disclosure of the requested information. Aksamit's

- 118 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
299 NEBRASKA REPORTS
AKSAMIT RESOURCE MGMT. v. NEBRASKA PUB. POWER DIST.
Cite as 299 Neb. 114

vice president of marketing testified that Aksamit had an interest in examining the documents as part of its marketing program to educate Nebraska's ratepayers and elected rate officials.

Dr. Ernest Goss testified about his research on public power in Nebraska. The research involved "[e]xamining the competitiveness of public power in Nebraska and how it stacks up against its counterparts in the contiguous states such as MidAmerican Energy in Iowa and . . . examining potential problems for the taxpayer, the ratepayer in the years ahead." Based on his research, Goss concluded that "there were clear and present dangers" for Nebraska's taxpayers and electricity ratepayers. Goss explained that the trajectory of electricity prices was larger than the national average and that the trajectory of rate changes "was and is unsustainable."

A difficulty that Goss encountered while conducting research was a lack of access to information about the costs and revenues for NPPD's individual generation units. Goss preferred to have data relating to individual generation units so that he could "more properly find out what's the cause and is it something that's going to be of fundamental issue for the businesses, the citizens, the taxpayers of the State of Nebraska in future years." According to Goss, such data would have been "very instrumental in coming to conclusions about the economic viability of public power in Nebraska."

Goss, as an economist and Nebraska taxpayer, expressed an interest in knowing NPPD's costs and revenue for individual generating units. He explained that NPPD does not pay property or income taxes and that the payments it makes in lieu of such taxes are much lower than the property tax rate, which meant that "those are taxes that are hoisted off on the Nebraska taxpayer." As an economist, Goss testified that it was very difficult to judge whether NPPD was being run efficiently without looking at the cost and revenue information broken down by generation units.

- 119 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
AKSAMIT RESOURCE MGMT. v. NEBRASKA PUB. POWER DIST.
Cite as 299 Neb. 114

A former NPPD employee testified that he observed business inefficiencies that increased NPPD's costs and negatively affected ratepayers. As a board member or a ratepayer, he would want access to NPPD's cost information by generation unit, because it would allow a better understanding of such costs in order to challenge board members on "why there's a continuation of a high cost generating unit and what could be done to lower those costs." He did not believe that NPPD's total cost information was adequate to make assessments as to cost by generating unit, because "[y]ou're lumping several contributors to a total cost which prevents you from making sound decisions on the individual contributors to that total." Based on NPPD's total cost information, an individual would be unable to identify "particular high cost plans."

NPPD focused on the confidentiality of the information in the industry and the competitive harm that it may suffer if it had to disclose records responsive to Aksamit's requests. There is no real dispute that Aksamit seeks to compete with NPPD.

NPPD also competes with participants in the Southwest Power Pool. The power pool is a regional integrated market for the buying and selling of electricity. NPPD both buys and sells electricity in that market. Thomas James Kent, the vice president and chief operating officer of NPPD, testified that the power pool makes bidding offers public 90 days after the operating day, but that it masks the source of the bid and the offer information in order to protect the confidentiality of the specific units. Kent testified that if a participant in the power pool had access to NPPD's generation unit-specific cost and revenue information, that information could be used to "create bid and offer strategies that would put NPPD at a disadvantage and an unequal playing field in terms of being able to compete equally in the commodity market." He explained that "if someone knew the specific cost information of a given unit, they may use that information to set a bid in pricing

- 120 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
299 NEBRASKA REPORTS
AKSAMIT RESOURCE MGMT. v. NEBRASKA PUB. POWER DIST.
Cite as 299 Neb. 114

strategy that would make their units more competitive." And if the power pool market is not recovering all of NPPD's costs of production, NPPD's only other source to make up that loss is with the rates charged to ratepayers.

Kent testified that power purchase agreements are typically not considered public documents, because the pricing information for the cost of the power is generally considered proprietary and confidential by the developer. For example, NPPD currently had a power purchase agreement with a wind facility in Nebraska which contained a confidentiality clause to protect pricing information and other terms. Other of NPPD's contracts similarly contained confidentiality provisions. Kent explained that "confidentiality is provided to ensure that the pricing arrangements, commercial arrangements, et cetera, are specific to that arrangement and can't be used competitively with other entities." NPPD considered the cost and revenue information on a generation unit-specific basis to be proprietary and confidential.

### DISTRICT COURT'S DECISION

The district court dismissed the petition for writ of mandamus. It stated that the evidence showed the generation unit-specific cost and revenue information was proprietary or commercial to NPPD and that if it were released publicly, it would give advantage to NPPD's competitors. The court reasoned:

> It would be highly unlikely that in enacting §84-712.05(3), the Legislature intended to allow record custodians to withhold proprietary or commercial information that would give advantage to business competitors, only to render the exemption meaningless by also requiring anything that could conceivably be labeled a "public purpose" for release to nullify the exemption. Here, release of NPPD's proprietary generation unit-specific cost and revenue information would give advantage to its competitors, including the relators. There is

merit to NPPD's argument that creating an unlevel field for competition is not a public purpose.

The district court concluded that NPPD established the exemption under § 84-712.05(3) by clear and convincing evidence. It stated:

> To require disclosure of NPPD's generation unit-specific cost and revenue information would give advantage to its business competitors, and result in disadvantage to its ratepayers by denying them "the benefits of a successful and profitable operation and conduct of the business of the district." [Neb. Rev. Stat.] §70-655(1) [(Cum. Supp. 2016)]. Such a result would serve no public purpose.

Aksamit filed a timely appeal, and we granted its petition to bypass review by the Nebraska Court of Appeals.

## ASSIGNMENTS OF ERROR

Aksamit assigns nine errors concerning the dismissal of its petition for a writ of mandamus. Consolidated and restated, the errors present one issue: Whether the district court erred in applying the exemption set forth in § 84-712.05(3).

## STANDARD OF REVIEW

[1] Statutory interpretation is a question of law that an appellate court resolves independently of the trial court.[3]

[2-4] Mandamus is a law action, and it is an extraordinary remedy, not a writ of right.[4] In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict, and we will not disturb those findings unless they are clearly erroneous.[5] Whether to grant a writ of mandamus is within the trial court's discretion.[6]

---

[3] *McCoy v. Albin*, 298 Neb. 297, 903 N.W.2d 902 (2017).

[4] *State ex rel. Veskrna v. Steel*, 296 Neb. 581, 894 N.W.2d 788 (2017).

[5] *Id.*

[6] *Id.*

- 122 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
AKSAMIT RESOURCE MGMT. v. NEBRASKA PUB. POWER DIST.
Cite as 299 Neb. 114

## ANALYSIS

### Public Policy

[5,6] In enacting the public records statutes, the Legislature has determined that the welfare of the people is best served through liberal public disclosure of the records of the three branches of government.[7] The Legislature intended that courts liberally construe §§ 84-712 to 84-712.03 for disclosure "whenever any . . . political subdivision . . . record of receipt . . . or expenditure involving public funds is involved."[8] And it does so "in order that the citizens of this state shall have the full right to know of and have full access to information on the public finances of . . . the public bodies and entities created to serve them."[9] Because the Legislature has expressed a strong public policy for disclosure, an appellate court must narrowly construe statutory exemptions shielding public records from disclosure.[10]

### Burdens of Proof for Writ of Mandamus

[7] A person denied access to a public record may file for speedy relief by a writ of mandamus under § 84-712.03.[11] A party seeking a writ of mandamus under § 84-712.03 has the burden to satisfy three elements: (1) The requesting party is a citizen of the state or other person interested in the examination of the public records, (2) the document sought is a public record as defined by § 84-712.01, and (3) the requesting party has been denied access to the public record as guaranteed by § 84-712.[12] It is uncontested that Aksamit satisfied its prima facie claim for release of public records.

---

[7] *Id.*

[8] § 84-712.01(3).

[9] *Id.*

[10] *Evertson v. City of Kimball*, 278 Neb. 1, 767 N.W.2d 751 (2009).

[11] *State ex rel. Veskrna v. Steel, supra* note 4.

[12] *Id.*

- 123 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
AKSAMIT RESOURCE MGMT. v. NEBRASKA PUB. POWER DIST.
Cite as 299 Neb. 114

[8] Where a suit is filed under § 84-712.03, the Legislature has imposed upon the public body the burden to "sustain its action."[13] If the public body holding the record wishes to oppose the issuance of a writ of mandamus, the public body must show, by clear and conclusive evidence, that the public record at issue is exempt from the disclosure requirement under one of the exceptions provided by § 84-712.05 or § 84-712.08.[14]

## Statutory Interpretation
### of § 84-712.05(3)

[9-11] Principles regarding statutory interpretation are well known. Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[15] In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.[16] It is not within the province of the courts to read a meaning into a statute that is not there or to read anything direct and plain out of a statute.[17]

In withholding the requested information, NPPD relies upon § 84-712.05(3). That statute sets forth an exemption for "[t]rade secrets, academic and scientific research work which is in progress and unpublished, and other proprietary or commercial information which if released would give

---

[13] See § 84-712.03(2).

[14] *State ex rel. Neb. Health Care Assn. v. Dept. of Health*, 255 Neb. 784, 587 N.W.2d 100 (1998). Cf. *Evertson v. City of Kimball, supra* note 10 (using clear and convincing burden of proof).

[15] *Farmers Co-op v. State*, 296 Neb. 347, 893 N.W.2d 728 (2017).

[16] *J.S. v. Grand Island Public Schools*, 297 Neb. 347, 899 N.W.2d 893 (2017).

[17] *In re Guardianship of Kaiser*, 295 Neb. 532, 891 N.W.2d 84 (2017).

- 124 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
299 NEBRASKA REPORTS
AKSAMIT RESOURCE MGMT. v. NEBRASKA PUB. POWER DIST.
Cite as 299 Neb. 114

advantage to business competitors and serve no public purpose."[18] The meaning of the latter part of the exemption is the crux of this appeal.

[12] We must give effect to the statutory language. Grammatically, the key phrase contains two parts, following initial words common to both. The common words are "proprietary or commercial information which if released would."[19] The two parts are "give advantage to business competitors" and "serve no public purpose."[20] Thus, the correct grammatical reading of the second part is "proprietary or commercial information which if released would . . . serve no public purpose." The two parts are joined by "and." The word "and" is "[a] conjunction connecting words or phrases expressing the idea that the latter is to be added or taken along with the first."[21] Generally, if an exception is expressed in the conjunctive, both requirements must be met for the exception to become operative.[22] Thus, NPPD had the burden to show both that the information would give advantage to competitors and that the information would serve no public purpose.

[13] "A public purpose has for its objective the promotion of the public health, safety, morals, security, prosperity, contentment, and the general welfare of all the inhabitants."[23] When we consider the meaning of the words "public purpose" in § 84-712.05(3), liberal public disclosure of the records of public entities is an important factor. The testimonies of Goss and the former NPPD employee articulated public

---

[18] § 84-712.05(3).

[19] *Id.*

[20] *Id.*

[21] Black's Law Dictionary 86 (6th ed. 1990). See, also, *State v. Melcher*, 240 Neb. 592, 483 N.W.2d 540 (1992).

[22] See *Dutton-Lainson Co. v. Continental Ins. Co.*, 271 Neb. 810, 716 N.W.2d 87 (2006).

[23] *Platte Valley Public Power & Irrigation District v. County of Lincoln*, 144 Neb. 584, 589, 14 N.W.2d 202, 205 (1944).

- 125 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
AKSAMIT RESOURCE MGMT. v. NEBRASKA PUB. POWER DIST.
Cite as 299 Neb. 114

purposes of the information well within political and economic realms; indeed, one can scarcely escape the intense public debate regarding the merits of fossil fuels versus renewable fuels.

The Iowa Supreme Court's interpretation and application of a similar statute illustrates its narrow reach. The Iowa statute provides that "[r]eports to governmental agencies which, if released, would give advantage to competitors and serve no public purpose" shall be kept confidential.[24] In construing that statute, the Iowa Supreme Court has stated that the public body must prove both that the documents "would give advantage to . . . competitors *and* [that] their release would serve *no* public purpose."[25] The court recognized the competing policy interests—"the public's right to know versus protecting an entity against a competitor."[26] But the court stated: "[I]t is not our responsibility to balance competing policy interests. This balancing is a legislative function and our role is simply to determine the legislature's intent about those policy issues."[27]

Similarly, we conclude that the language of § 84-712.05(3) does not allow us to balance the competing interests. Information which would give a business competitor an advantage may be withheld only if it would "serve no public purpose." There is no requirement that the public purpose to be served outweigh the competitive harm caused.

We recognize that NPPD is not a typical governmental body. A public corporation organized for the purpose of generating, transmitting, and distributing electrical energy operates in a proprietary as distinguished from a governmental

---

[24] Iowa Code Ann. § 22.7(6) (West Cum. Supp. 2017).

[25] *Northeast Council v. Dept. of Public Health*, 513 N.W.2d 757, 760 (Iowa 1994) (emphasis in original).

[26] *Id.* at 761.

[27] *Id.*

- 126 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
299 NEBRASKA REPORTS
AKSAMIT RESOURCE MGMT. v. NEBRASKA PUB. POWER DIST.
Cite as 299 Neb. 114

capacity.[28] The Legislature gave to public power districts the usual powers of corporation organized for public purposes, and statutes located in chapter 70, article 6, of the Nebraska Revised Statutes (concerning public power districts) are intended to permit the business of the district to be operated in a successful and profitable manner.[29] From this general premise, the district court inferred legislative intent regarding a public power district's records. But its inference finds no direct statutory support.

The Legislature has not included in the lengthy statutes governing public power districts any provision purporting to deny the public access to its books and records. Indeed, the statutes say otherwise. The board of directors of a public power district "shall cause to be kept accurate minutes of their meetings and accurate records and books of account," which books and records shall be open to public inspection.[30] Further, if a district wishes to acquire an existing system for electric light and power, hydrogen, or ethanol, a copy of the proposed contract must be open to public inspection for a period of time before being executed.[31]

Two other public power district statutes bear upon the issue only tangentially. One requires an annual audit by a certified public accountant of "the books, records, and financial affairs of the district."[32] The other mandates that the accountant have "access to all books, records, vouchers, papers, contracts, or other data."[33] Neither statute limits public access to these

---

[28] *Wittler v. Baumgartner*, 180 Neb. 446, 144 N.W.2d 62 (1966), *overruled in part on other grounds, State ex rel. Douglas v. Nebraska Mortgage Finance Fund*, 204 Neb. 445, 283 N.W.2d 12 (1979).

[29] See *York County Rural Public Power Dist. v. O'Connor*, 172 Neb. 602, 111 N.W.2d 376 (1961).

[30] Neb. Rev. Stat. § 70-622 (Reissue 2009).

[31] See Neb. Rev. Stat. § 70-626 (Reissue 2009).

[32] Neb. Rev. Stat. § 70-623 (Cum. Supp. 2016).

[33] Neb. Rev. Stat. § 70-623.02 (Reissue 2009).

- 127 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
AKSAMIT RESOURCE MGMT. v. NEBRASKA PUB. POWER DIST.
Cite as 299 Neb. 114

materials. At most, the second statute effectively prohibits a power district from contractually limiting its accountant's access to the district's records.

If presented with the opportunity to exclude a public power district's competitive information from public scrutiny, the Legislature might well do so. But thus far it has not. If the Legislature had done so, we would not hesitate to apply the "other statute" exception[34] of the public records law and the general principle favoring a specific over a general statute.[35]

NPPD failed to show that it was entitled to withhold the requested information. Although it demonstrated that releasing the information requested would give an advantage to its competitors, it failed to establish that the information would serve no public purpose. The law as framed required it to prove both elements. It is the role of the Legislature to balance and reconcile the public purposes embodied in the public records statutes and the public power statutes.

## CONCLUSION

In order for NPPD to withhold its proprietary or commercial information, it had to show that the information "if released would give advantage to business competitors and serve no public purpose."[36] Construing this exemption narrowly, we conclude that NPPD failed to demonstrate by clear and conclusive evidence that the information would serve no public purpose. We therefore reverse the district court's order and remand the cause with direction to issue an appropriate writ in conformity with this opinion.

REVERSED AND REMANDED WITH DIRECTION.

WRIGHT, J., not participating.

---

[34] See § 84-712.01(1).

[35] See, e.g., *State v. Thompson*, 294 Neb. 197, 881 N.W.2d 609 (2016).

[36] See § 84-712.05(3).