# IN THE COURT OF APPEALS OF IOWA

No. 23-1765
Filed December 4, 2024

**POET-DSM PROJECT LIBERTY, LLC,**
    Plaintiff-Appellant,

**vs.**

**IOWA DEPARTMENT OF REVENUE,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Scott J. Beattie, Judge.


A taxpayer appeals the judicial review decision denying its motion to shield documents supporting its tax protest from public disclosure. **AFFIRMED.**


Cody J. Edwards, Ronald L. Mountsier, and William M. Reasoner of Dickinson, Bradshaw, Fowler & Hagen, P.C., Des Moines, for appellant.

Brenna Bird, Attorney General, Breanne A. Stoltze, Andrew N. Jensen, and Stephen P. Sullivan, Assistant Attorneys General, for appellee.


Heard by Tabor, C.J., and Ahlers and Sandy, JJ.

**TABOR, Chief Judge.**

This appeal involves the intersection between a tax protest and the Iowa Open Records Act. While protesting the denial of tax credits, POET-DSM Project Liberty, LLC (POET), moved to keep its filing and supporting exhibits confidential under three provisions of Iowa Code section 22.7 (2021). But facing public records requests, the Iowa Department of Revenue rejected POET's push for categorical exemptions for certain reports or communications to government entities under subsections 6 and 18.[1] The director also deferred a decision on POET's argument that the tax protest materials contained trade secrets under subsection 3.

POET then sought judicial review of the department's denial of its request for confidentiality. After losing that round, POET appeals again. In our review of this administrative appeal, we agree with the district court and the department that the documents are not exempt from public disclosure under either subsection 6 or 18. Subsection 3, protecting trade secrets, is not before us. After procedendo issues on this appeal, the taxpayer must return to the department for a decision whether its tax protest exhibits are confidential as trade secrets.

## I. Facts and Prior Proceedings

POET is a South Dakota-based producer of ethanol. With Project Liberty, POET planned to design, build, and operate a biorefinery pilot plant able to process lignocellulosic material. To help finance this "first-of-its-kind" process to create

---

[1] In oral argument, the attorneys referred to POET's claims under subsections 6 and 18 as "categorical" grounds. To be clear, we use "categorical" because POET claimed those grounds protected its entire protest, rather than the piecemeal approach applied to its trade secrets claim. We do not imply that the statute requires a "categorical" or all-or-nothing approach for those grounds. We use the parties' terminology here. And we discuss one exception in footnote 6.

ethanol from corn stover,[2] POET sought research activities tax credits from the revenue department.

But in January 2021, POET received notice from the department denying its claim of research activities tax credits for tax years 2016, 2017, 2018, and 2019. *See* Iowa Code § 422.33(5) (setting out the research activities tax credit). On top of the denial, the department directed POET to repay $595,241.28 it received in tax credit in 2017, plus interest. POET filed a forty-nine-page protest,[3] challenging the tax credit denial.[4] Along with the protest, POET submitted thousands of pages of exhibits detailing the research and development of its ethanol extraction method, plus financial records.

Rather than have an attorney file its tax protest, POET relied on its Chicago-based accountant. At the bottom of the cover page, POET included this statement:

> This Protest and All Exhibits/Documents Identified Herein and Attached Hereto Contain or Constitute Trade Secret Information that is Protected from Disclosure Pursuant to Iowa Code Sections 422.72, 22.7(3), 550.2(3)(d), and 422.72.

The department responded with a letter to POET acknowledging receipt of the protest. But that letter warned the taxpayer:

> PLEASE NOTE: Your protest and any documents you provide to the department in support of your protest, including your tax returns, could be made available for public inspection if requested pursuant to Iowa's open records laws. To learn more about what information the Department will redact prior to public disclosure, and how you may request that the Department redact certain other information, please visit tax.iowa.gov/TBOR.

---

[2] Corn stover consists of the stalks, leaves, and cobs that remain on the field after the corn kernels are harvested. *Slach v. Heick,* No. 14-0539, 2015 WL 1546445, at *5 n.5 (Iowa Ct. App. Apr. 8, 2015).

[3] The parties use the term "appeal" interchangeably with "protest." We use "protest" to distinguish the agency proceeding from the current appeal.

[4] The protest of the decision denying the credit and assessing payment is pending in the agency.

After POET's submission, the department received two public records requests for copies of the protest documents. Iowa Code chapter 22 governs access to public records.[5] And as the State argued in the district court, for decades the department has treated tax protests and any documents attached as public records. *See* Iowa Code §§ 17A.3, 422.20, .72; *see also City of Dubuque v. Dubuque Racing Ass'n., Ltd.*, 420 N.W.2d 450, 452 (Iowa 1988) (citing section 22.1 defining public records as including "those documents that originate from other sources but are held by public officers in their official capacity"). The department's practice follows Iowa's "liberal policy in favor of access to public records," evidenced by the statutory "presumption in favor of disclosure." *Mitchell v. City of Cedar Rapids*, 926 N.W.2d 222, 229 (Iowa 2019) (quoting *Hall v. Broadlawns Med. Ctr.*, 811 N.W.2d 478, 485 (Iowa 2012)). It is likewise consistent with this recent sentiment from our supreme court: "The Open Records Act is designed to open the doors of government to public scrutiny and to prevent government from secreting its decision-making activities from the public, on whose behalf it is its duty to act." *Ripperger v. Iowa Pub. Info. Bd.*, 967 N.W.2d 540, 549 (Iowa 2021) (cleaned up) (quoting *Mitchell*, 926 N.W.2d at 229).

But that openness is not unlimited; some documents must be kept confidential. *See id.* ("The Act essentially gives all persons the right to examine public records but then lists specific categories of records that must be kept

---

[5] Relevant to this discussion, the Iowa Code defines public records as "all records, documents, tape, or other information, stored or preserved in any medium, of or belonging to this state . . . whose facilities or indebtedness are supported in whole or in part with property tax revenue" and "all records relating to the investment of public funds." Iowa Code § 22.1(3)(a)–(b).

confidential." (cleaned up)). Section 22.7 lists those public records that "shall be kept confidential" unless otherwise authorized by law. Relevant to this appeal, confidential records include:

> 3. Trade secrets which are recognized and protected as such by law.
> . . . .
> 6. Reports to governmental agencies which, if released, would give advantage to competitors and serve no public purpose.
> . . . .
> 18. Communications not required by law, rule, procedure, or contract that are made to a government body or to any of its employees by identified persons outside of government, to the extent that the government body receiving those communications from such persons outside of government could reasonably believe that those persons would be discouraged from making them to that government body if they were available for general public examination.

Iowa Code § 22.7.

Seeking to prevent disclosure, POET filed a "request to delete identifying details." That request spanned 593 pages and identified nearly as many exhibits that POET wished to keep from public view. POET relied on subsections 3, 6, and 18 of section 22.7. At bottom, POET asked the department to "keep the entirety of Taxpayer's protest and exhibits confidential." The department resisted, and the director set the request for hearing.

The director decided the protest documents were not confidential under subsection 6 because disclosure served a public purpose and not confidential under subsection 18 because the communications were required by law as part of the protest. It did not rule on the trade secrets ground. POET petitioned for judicial review; the district court affirmed the department. POET appeals.

## II.    Standard of Review

The director's decision is an agency action governed by Iowa Code section 17A.19.  *Lowe's Home Centers, LLC v. Iowa Dep't of Revenue*, 921 N.W.2d 38, 45 (Iowa 2018).  "The district court acts in an appellate capacity in exercising judicial review of agency action."  *Id.*  On appeal, "[w]e apply the standards of Iowa Code section 17A.19(10) to determine if we reach the same result as the district court."  *Id.*  That is, we determine whether the agency action was deficient for any of the reasons listed in subsection 10 paragraphs (a) to (n) and grant relief if that deficiency injured the taxpayer's substantial rights.  *See* Iowa Code § 17A.19(10); *Good v. Iowa Dep't of Hum. Servs.*, 924 N.W.2d 853, 860 (Iowa 2019).  "If we reach the same conclusions, we affirm; if not, we reverse." *Nance v. Iowa Dep't of Revenue*, 908 N.W.2d 261, 267 (Iowa 2018).

When the district court engages in statutory interpretation, our review is for the correction of errors at law.  *Id.*

## III.    Discussion

We first clarify what we are not deciding—whether POET's exhibits are exempted from disclosure as trade secrets.  To the department, POET asserted confidentiality under section 22.7(3).  Indeed, trade secrets were the focus of POET's redaction requests.  The director noted the administrative code requires the taxpayer to "provide, with specificity, the items or parts of items that they believe should be redacted" as trade secrets and "also identify the legal basis for the redaction of each item" in a nonconclusory statement.  The director found POET's arguments relating to the 540 individual requests for redaction were not specific enough and left this issue to be resolved after the judicial review

proceedings on the two categorical grounds.  The parties agree that the trade-secrets issue is not ripe.

On the ripe issues, POET claims the district court erred in five ways:

1.  By determining there was a public purpose for disclosure of POET's tax protest under subsection 6 so it was not confidential.

2.  By failing to rule on the "[r]eports to government agencies" and "advantage to competitors" elements under subsection 6.

3.  By determining the director correctly found the protest and exhibits were not confidential under subsection 18.

4.  By failing to decide whether POET was required by law to file the protest under subsection 18.

5.  By failing to decide whether POET was required by law to file certain documents with the protest under subsection 18.

We address the two subsections in turn.  In doing so, we remember that POET, as the proponent of confidentiality, has the burden to prove the grounds.  *See Clymer v. City of Cedar Rapids*, 601 N.W.2d 42, 45 (Iowa 1999).

**A. Subsection 6: Reports To Government Agencies Which, If Released, Would Give Advantage To Competitors and Serve No Public Purpose.**

The director found disclosure of POET's entire tax protest would serve a public purpose because POET received $2 million in research activities tax credits, and the public has an interest in judging whether the tax credit is a good public policy and whether the department is applying it correctly.  The director found no distinction between a taxpayer receiving a cash payment in the form of a refund check or grant versus a credit toward reducing its taxes due.  Because POET

received government funds, according to the director, disclosure would serve a public purpose.[6]

The district court agreed, finding, "POET has failed to demonstrate that the director made an error of law in determining that there was a lack of specific evidence presented by POET that disclosure would not serve a public purpose. The public has a rightful expectation to know how their tax dollars are being spent." It elaborated:

> The bulk of POET's argument is that a ruling on the existence of a public purpose would be premature because they have not yet received any public dollars. As noted above, this is not the case; POET is appealing the [department's] order that they refund the tax credits they have already received.

But even if POET had not yet received a tax break, the court still saw a public purpose in the disclosure:

> [T]he public has a strong interest in knowing not only why an organization is entitled to public funds but also why an organization may not be entitled to public funds. Such knowledge reveals to the public the decision-making process behind an agency's actions. Regardless of how an agency ultimately rules, applying for public funds opens up the applicant for public scrutiny.

Because it found a public purpose, the court did not address POET's arguments about the other elements of subsection 6.

On appeal, POET renews its argument that disclosure of its tax protest serves no public purpose because it might not receive public funds. It reasons that if the protest fails and credits are denied, POET will receive no public funds, and

---

[6] The director also determined that six documents POET identified as exempt for lacking a public purpose were not protected under subsection 6 because they were not reports to the government—instead they were tax returns and permits issued *by* governmental agencies *to* the taxpayer. *See* Iowa Code section 22.7(6).

the public no longer has an interest in disclosure. So, POET contends, it was premature to rule that the protest was not confidential under subsection 6.

We deal first with POET's claim that it received no public funds. The director found POET did accept public funds in the form of tax credits. That finding binds us if supported by substantial evidence. *See Christensen v. Iowa Dep't of Revenue*, 944 N.W.2d 895, 910 (Iowa 2020). And in *Iowa Film Production Services v. Iowa Department of Economic Development*, the supreme court found no distinction between a direct payment versus a tax credit. 818 N.W.2d 207, 226 (Iowa 2012). "Either way, a private entity is receiving taxpayer money in furtherance of a public purpose." *Id.*

State tax returns show POET claimed more than $1 million in tax credits from 2016 through 2019. The department requested immediate repayment of the 2017 claim. In fact, POET concedes it received the credit for at least one of the years claimed. So substantial evidence supports the court's conclusion that POET received tax credits before the 2021 decision that it was ineligible.

As its next step, POET argues that if its tax protest fails, it will not receive any public funds, so the director must resolve the tax protest before it can determine whether there is a public purpose to the disclosure. POET cites several cases expressing that the public has an interest in how public funds are being spent. *See, e.g., id.* at 228 ("[W]here 'public funds are involved . . . the public has a right to know how those funds have been spent . . . and how efficiently the funds were spent.'" (quoting *Ne. Council on Substance Abuse, Inc. v. Iowa Dep't of Pub. Health*, 513 N.W.2d 757, 761 (Iowa 1994)). And POET claims that "[w]here no public funds are expended, there cannot be a public purpose."

But even if POET did not concede that it already received at least one year of tax credit, the no-public-purpose exception would not apply. "[T]he legislature has drawn the exception to confidentiality narrowly by requiring a showing that *no* public purpose is served by public disclosure." *Ne. Council on Substance Abuse*, 513 N.W.2d at 761 (emphasis added). Like the tax credits disputed in *Iowa Film Production Services*, 818 N.W.2d at 226, "the requested records would provide more information . . . regarding how public money was spent." The public has a "right to know how [public] funds have been spent," but also as "voters decide whether government programs, even when approved by the legislature and administered by the executive branch of government, are a good idea." *Id.* at 228 (cleaned up).

True, the expenditure of public funds is an important reason for disclosure. But our cases don't require that money change hands or credit be conferred—the public may be just as interested in why a taxpayer *did not* receive a credit or other non-economic aspects of a policy. *See Ripperger*, 967 N.W.2d at 557 ("The Open Records Act doesn't exist just to uncover fraudulent or illegal conduct, but also to bring to light the need for *different* laws and policies." (Mansfield, J., concurring in part and dissenting in part)). When the department denies tax credits, public scrutiny of taxpayer protests could clarify whether the department was administering tax policy consistent with legislative goals. And it could help other entities understand how to qualify for the credits. *See, e.g.*, *Ne. Council on Substance Abuse*, 513 N.W.2d at 760 (acknowledging public purpose justifies disclosure, even if it aids a competitor, because confidentiality requires proving

both elements). Thus, we agree with the district court that the director did not err in finding subsection 6 did not protect POET's tax protest from public disclosure.[7]

### B. Subsection 18: Communications Not Required By Law, to the Extent that the Government Body Could Reasonably Believe that the Taxpayer Would Be Discouraged From Protesting If Supporting Documents Were Disclosed

POET next contends that because its tax protest was not required by law, the district court erred in ruling that the supporting documents were not confidential under subsection 18.[8]

The director found that "[w]hile a taxpayer is not required to file a tax appeal, those who do file an appeal are bound by those rules and statutes." The director described the "robust legal framework" for a tax protest, the protections available to parties for redactions, and the department's longstanding "policy of disclosure." The protections referred to are in the tax code at Iowa Code sections 422.20(5)(a) and (b) (from subchapter II on personal net income) and 422.72(8)(a) and (b) (from subchapter VI on administration of the tax code). Paragraph (a) of both subsections provides that "[p]rior to the record in an appeal or contested case being made available for public inspection, the department *shall* redact" any personal information including account numbers, social security numbers, employee identification numbers, the names of minors, and medical records. Iowa Code §§ 422.20(5)(a) (emphasis added), 422.72(8)(a) (emphasis added).

---

[7] Because POET failed to show the lack of a public purpose, we need not address the other elements—that the protest was a report or that disclosure provided an advantage to competitors.

[8] The statute sets out three exceptions to this confidentiality ground, none of which are at issue. *See* Iowa Code § 22.7(18)(a)–(c).

Paragraph (b) of both subsections provides that "[u]pon a motion filed by the taxpayer, the department *may* redact . . . any other information . . . if the taxpayer proves by clear and convincing evidence that the release of such information would disclose a trade secret or be a clear, unwarranted invasion of personal privacy." *Id.* §§ 422.20(5)(b) (emphasis added), 422.72(8)(b) (emphasis added). Both paragraphs apply to "a pleading, exhibit, attachment, motion, or written evidence" in the appeal record. *Id.* §§ 422.20(5)(b), 422.72(8)(b).

The director found that by not following the protocol within paragraph (b) for more redactions, POET was asking the agency to find "they do not have to abide by all of the statutes and policies governing the appeal process, including those that govern whether a file is available for public inspection." The director thus ruled POET "cannot invoke the exception to disclosure in [section] 22.7(18)."

The district court agreed that

POET knew before making their appeal that the documents POET sought to shield must have been proven trade secrets or an unwarranted invasion of privacy. Neither of those was proven at the time. The Director correctly found that once POET decided to go through with an appeal, POET subjected itself to all applicable laws that govern the appeal process.

In this appeal, POET again argues it was wrong for the director to conclude that disclosure of its supporting documents was required by law once it chose to protest the denial of tax credits. POET emphasizes: "The legislature enacted section 22.7(18) 'to permit public agencies to keep confidential a broad category of useful incoming communications which might not be forthcoming if subject to public disclosure.'" *Ripperger*, 967 N.W.2d at 551 (quoting *City of Sioux City v. Greater Sioux City Press Club*, 421 N.W.2d 895, 898 (Iowa 1988)).

POET compares its situation to the property owners in *Ripperger*. In that case, Polk County residents opposed publication of a list showing they requested the assessor remove their home addresses from otherwise publicly available property records. 967 N.W.2d at 551–52. The supreme court held that the residents proved confidentiality under subsection 18 because they showed such requests—which promote public safety—would be deterred by the publication. *Id.* at 553. The court found, "Communications requesting removal from the name search function were 'not required by law' because property owners can choose whether to request removal." *Id.* at 552 (quoting Iowa Code § 22.7(18)).

Similarly, in *Greater Sioux City Press Club*, the supreme court found applications for city manager were confidential under subsection 18. 421 N.W.2d at 898. The public records requesters "urge[d] that under procedures adopted by the city council any applicant interested in the city manager position was required to submit an application." *Id.* But the court found those communications were not required by law because candidates were not required to apply for the job. *Id.*

At first glance, those cases support POET's position that its tax protest was not required. Yet as we dig deeper, we find those cases distinguishable. Neither the Polk County residents nor the job applicants had to interact with the government. Instead, they chose to seek privacy protection or a job opportunity. Their communications were not required by law.

By contrast, POET was in a different position. It had already received government benefits in the form of tax credits. But then the revenue department decided POET was ineligible for those credits and ordered immediate repayment.

That order required some kind of communication from POET—either repayment or a protest.

POET disputes the interpretation by the department and district court that it had to respond in writing if it chose to protest. But that is what the regulation requires: "Any person wishing to contest an assessment . . . shall file an appeal, in writing, with the department . . . ." Iowa Admin. Code r. 701-7.9; *see also id.* at r. 701-7.3. Unambiguously, the regulation requires a writing to kick off a protest. And the taxpayer must submit information with the protest that proves its eligibility for the credit. In a finer point, POET complains that even if it were required to appeal in writing, "Iowa law requires very little to file a proper appeal. . . . [A] proper appeal does not require the filing of exhibits." But a written filing is still required; POET's accountant determined what it would submit for the protest. And POET did not avail itself of the procedure to show the protest contained trade secrets worthy of confidentiality. *See* Iowa Code §§ 422.20(5)(b), .72(8)(b). In sum, we agree with the district court that POET did not prove its tax protest was a communication not required by law.[9]

## IV.    Conclusion

Because the director's decision was not deficient for any of the reasons in Iowa Code section 17A.19(10), we find no error and affirm.

**AFFIRMED.**

---

[9] Again, because POET failed to show one of the elements of subsection 18, we need not address its other claims on that ground.