# IN THE SUPREME COURT OF IOWA

No. 18–0124

Filed April 5, 2019

**JERIME ERON MITCHELL** and **BRACKEN ANN MITCHELL,**

Appellees,

vs.

**CITY OF CEDAR RAPIDS, IOWA,** and **OFFICER LUCAS JONES,** Individually and in His Official Capacity,

Appellants.

---

Appeal from the Iowa District Court for Linn County, Patrick R. Grady, Judge.

Defendants in civil action arising from police shooting appeal discovery rulings denying protective order for police investigative reports. **AFFIRMED.**

Wilford H. Stone and Gregory T. Usher of Lynch Dallas, P.C., Cedar Rapids, and Elizabeth D. Jacobi, City Attorney's Office, Cedar Rapids, for appellants.

Laura M. Schultes, Pressley Henningsen, and Emily Anderson of RSH Legal, P.C., Cedar Rapids, and Larry R. Rogers Jr. of Powers, Rogers & Smith, LLP, Chicago, Illinois, for appellees.

**WATERMAN, Justice.**

In this interlocutory appeal, we revisit the interplay between our civil discovery rules and a confidentiality provision in the state Freedom of Information Act, Iowa Code section 22.7(5) (2018), to determine whether the district court abused its discretion by compelling the defendants to produce police investigative reports without a protective order preventing disclosure to the public. This tort action arises out of a late-night traffic stop. A Caucasian police officer fired gunshots while struggling with an African-American motorist. The gunshot wounds rendered the motorist a quadriplegic. The police department released the dash cam video of the incident to the public. The video went viral on social media,[1] and the shooting attracted intense media attention. A year earlier, the same officer had fatally shot another man, a Caucasian, fleeing a traffic stop. No criminal charges were filed in either incident.

The plaintiffs, the injured motorist and his wife, sued the police officer and the City for compensatory and punitive damages. The plaintiffs sought discovery of the police investigative reports, which the defendants offered to produce subject to a protective order prohibiting disclosure to the media or other nonparties. The district court, noting the police investigation had been completed and involved no confidential informants, denied the motion for protective order but limited the order compelling production to reports prepared within ninety-six hours of the incident, excluding police internal review records. We granted the defendants' application for interlocutory appeal.

---

[1]The dash cam video on one website alone was viewed over 832,000 times. PoliceActivity, *Police Dashcam Video in Shooting that Paralyzed Jerime Mitchell*, YouTube (Dec. 8, 2016), https://www.youtube.com/watch?v=fexMzfomUok.

On our review, we affirm. Litigants suing the government ordinarily may obtain relevant records through discovery notwithstanding confidentiality provisions in Iowa Code section 22.7, but a protective order may be required precluding disclosure to nonparties. Police investigative reports do not lose their confidential status when the investigation closes. But section 22.7(5) includes an exemption from confidentiality for basic facts about the incident, subject to a legislatively prescribed balancing test. Our precedent also uses a balancing test. The district court did not abuse its discretion by denying the requested protective order. The district court balanced the competing interests in confidentiality and transparency through its ninety-six-hour time limit, a carve-out for police internal review records, and directives to handle remaining confidentiality issues by redaction or further proceedings.

## I. Background Facts and Proceedings.

On November 1, 2016, Police Officer Lucas Jones was on night shift patrol for the Cedar Rapids Police Department. At 1:17 a.m., he saw a truck driving with a broken rear license plate light.[2] Officer Jones pulled the truck over, approached on foot, and asked the driver for his license and registration. The driver, Jerime Mitchell, complied. Officer Jones and Mitchell dispute what happened over the next two minutes.[3] Mitchell got out of the truck and resisted Officer Jones's efforts to handcuff him. The two men wrestled to the ground. Officer Jones's police dog, Bane, joined the fray. Mitchell forced his way up and back

---

[2]"A citation issued for failure to have . . . a rear registration plate light . . . shall first provide for a seventy-two hour period within which the person charged with the violation shall replace or repair the . . . light." Iowa Code § 321.385A(1)(*b*). If the light is replaced within the time period, the citation is expunged. *Id.* § 321.385A(2).

[3]The microphone Officer Jones wore on his uniform was not functioning during the traffic stop, and the only audio from the incident was recorded by the microphone in the squad car.

into his driver's seat and began driving off with Officer Jones clinging to the open door. Officer Jones unholstered his handgun and fired three shots before jumping or falling off the moving truck. A bullet wound near Mitchell's cervical spine left him paralyzed from the neck down.

The incident received widespread media coverage and intense public interest.[4] Protesters marched on city hall demanding the release of the squad car's dash camera footage, which the City released to the public. The Linn County Attorney convened a grand jury to review the incident, but no criminal charges were filed against Officer Jones or Mitchell.

In February 2017, Mitchell and his spouse, Bracken, filed this civil action against Officer Jones individually and the City of Cedar Rapids alleging negligence, assault and battery, intentional infliction of emotional distress and seeking compensatory and punitive damages.

---

[4]Kevin Barry, *Special Report: What's Different One Year After Jerime Mitchell Was Shot*, CBS2/FOX28 (Nov. 1, 2017), https://cbs2iowa.com/news/local/special-report-whats-different-one-year-after-jerime-mitchell-was-shot [https://perma.cc/3EXH-VXHC]; Sarah Boden, *Cedar Rapids Police Officer Won't Be Indicted, Some Say Grand Jury Should Have Been Postponed*, Iowa Pub. Radio (Dec. 7, 2016), https://www.iowapublicradio.org/post/cedar-rapids-police-officer-wont-be-indicted-some-say-grand-jury-should-have-been-postponed#stream/0 [https://perma.cc/WX79-T2EW]; Enjoli Francis, *Questions Linger After Dash-Cam Video of Man Being Shot by Cedar Rapids Police During Traffic Stop Is Released*, ABC News (Dec. 9, 2016), https://abcnews.go.com/US/questions-linger-dashcam-video-man-shot-cedar/story?id=44087880 [https://perma.cc/ZA7H-NHYH]; Michael Howell, *Jerime Mitchell Refutes Officer's Account of Nov. Altercation*, CBS2 Iowa (Dec. 8, 2016), https://cbs2iowa.com/news/local/jerime-mitchell-refutes-officers-account-of-nov-altercation [https://perma.cc/L25P-PGZ6]; *No Charges Against White Iowa Police Officer Who Paralyzed Black Man in Shooting*, CBS News (Dec. 6, 2016), https://www.cbsnews.com/news/no-charges-for-lucas-jones-white-iowa-police-officer-who-paralyzed-jerime-mitchell-in-shooting/ [https://perma.cc/QCC7-5D3X]; Staff Editorial, *Justice Talks Need Maximum Openness*, The Gazette (Oct. 28, 2017), https://www.thegazette.com/subject/opinion/staff-editorial/justice-talks-need-maximum-openness-20171028 [https//perma.cc/F337-KFKR]; Makayla Tendall, *Talks Continue on Community Policing, Racial Profiling in Cedar Rapids*, The Gazette (Dec. 14, 2017), https://www.thegazette.com/subject/news/government/talks-continue-on-community-policing-racial-profiling-in-cedar-rapids-20171214 [https://perma.cc/N2QN-PJ9K].

The Mitchells allege that the City is vicariously liable for Officer Jones's actions. The defendants filed separate answers denying liability. The parties proceeded with discovery.

The Mitchells requested the law enforcement investigative reports for the November 2016 shooting, as well as for an October 20, 2015 officer-involved shooting. During the 2015 incident, Officer Jones responded to another officer's call to assist with a traffic stop and search of Jonathan Gossman, a Caucasian. Gossman fled on foot. Officer Jones released Bane. The police dog sunk his teeth into Gossman's arm and brought him to the ground. According to Officer Jones, Gossman was holding a black handgun pointed at another officer and Bane. Officer Jones fired sixteen rounds at Gossman, who died from gunshot wounds. The Linn County Attorney and the Iowa Department of Criminal Investigation reviewed the incident, and Officer Jones was not charged with any crime.

The defendants produced in Mitchell's civil action the police department's training, policy, and operational manuals without a protective order. They also agreed to produce the requested reports to the Mitchells subject to their proposed protective order modeled after the stipulated protective order entered early in the case in a federal lawsuit arising from another highly publicized police shooting. *See Steele v. City of Burlington*, 334 F. Supp. 3d 972, 975 (S.D. Iowa 2018). The Mitchells offered to stipulate to a narrower protective order requiring redaction of witness names, addresses, dates of birth, and social security numbers. The parties failed to agree on the terms of a protective order. In July 2017, Officer Jones and the City filed a motion for a protective order under Iowa Rule of Civil Procedure 1.504. The defendants sought to prevent public disclosure of confidential documents including the police

investigative reports. *See* Iowa Code § 22.7(5). The Mitchells filed a resistance, arguing that the protective order proposed by the defendants would permit them to determine unilaterally which documents are confidential and require the Mitchells to challenge the confidentiality of each document requested.

After a hearing, the district court ordered the City and Officer Jones to produce

> any requested law enforcement investigative reports, including electronic recordings or telephone communications generated by or in the possession of a defendant or a police officer acting in the scope of his or her duties that were compiled as a result of the reporter's own observation or investigation, including interviews or conversations with law enforcement at the scene of the incident that resulted in the injuries to Plaintiff Jerime Mitchell or lay witnesses to that event. The order covers any investigative reports or electronic communication generated or filed within 96 hours of the incident, but does not apply to reports or memorandum generated solely for purposes of a police internal review of the incident.

The court relied on the three-part balancing test in *Hawk Eye v. Jackson*, 521 N.W.2d 750, 753 (Iowa 1994), to determine that the reports should be disclosed under Iowa Code sections 22.7 and 622.11. The district court did not compel the production of the personnel records, medical records, the internal police investigation records, or other documents. Instead, the court directed the parties to attempt to reach an agreement as to those records. If the negotiations were unsuccessful, the court would resolve the dispute.

The defendants filed a motion to reconsider the ruling in light of *American Civil Liberties Union Foundation of Iowa, Inc. v. Records Custodian, Atlantic Community School District*, 818 N.W.2d 231 (Iowa 2012), in which we held that a balancing test was unnecessary when "the plain language of the statute supports the exemption." *Id.* at 236. The

district court denied the motion, determining that *Atlantic Community School District* was limited to its facts.  The district court further stated,

> The Court concludes there is some ambiguity in § 22.7(5).  The Court construes the statute as providing that peace officers' investigative reports, privileged records or information specified in Iowa Code § 80G.2 are to be kept confidential, but then goes on to set forth its own sort of "balancing test" language to certain information.  The section creates its own exception to confidentiality, by stating that "the date, time, specific location, and immediate facts and circumstances surrounding a crime or incident shall not be kept confidential under this section, except in those unusual circumstances where disclosure would plainly and seriously jeopardize an investigation or pose a clear and present danger to the safety of an individual."  Iowa Code § 22.7(5) (2017).  In this case, there is no apparent ongoing investigation with respect to the records at issue, and there has been no allegation that any individual's safety will be impaired as a result of disclosure of the records.  The Court finds that the temporal limits of its order allows disclosure of what the Court finds [to be] documents concerning, "immediate facts and circumstances surrounding a crime or incident."

Officer Jones and the City filed an application for interlocutory appeal, which we granted.  We retained the appeal.

## II.  Scope of Review.

We review for an abuse of discretion a district court's discovery ruling on a motion for protective order.  *Sioux Pharm, Inc. v. Eagle Labs., Inc.*, 865 N.W.2d 528, 535–36 (Iowa 2015).  "A district court abuses its discretion 'when the grounds underlying . . . [the] order are clearly untenable or unreasonable.' "  *Id.* at 535 (quoting *Mediacom Iowa, L.L.C. v. Inc. City of Spencer*, 682 N.W.2d 62, 66 (Iowa 2004)).  "A ruling based on an erroneous interpretation of a discovery rule can constitute an abuse of discretion."  *Mediacom*, 682 N.W.2d at 66 (quoting *Shook v. City of Davenport*, 497 N.W.2d 883, 885 (Iowa 1993), *abrogated on other grounds by Wells Dairy, Inc. v. Am. Indus. Refrigeration, Inc.*, 690 N.W.2d 38, 44–48 (Iowa 2004)).

"We review the district court's interpretation of chapter 22 for correction of errors at law." *Iowa Film Prod. Servs. v. Iowa Dep't of Econ. Dev.*, 818 N.W.2d 207, 217 (Iowa 2012).

### III. Analysis.

We must determine whether the district court abused its discretion by denying the defendants' motion for a protective order. The defendants agreed to produce the reports to the Mitchells for use in this lawsuit subject to a protective order preventing them from disseminating the reports to the media or other nonparties. The defendants argue that the reports at issue are confidential within the meaning of Iowa Code section 22.7(5) and that they established good cause for a protective order. The Mitchells contend the reports are not confidential and the defendants failed to meet their burden to show good cause for a protective order in light of the high public interest in this officer-involved shooting. We are mindful that "[p]eople in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572, 100 S. Ct. 2814, 2825 (1980).

We begin our analysis with the interplay between our discovery rules and Iowa Code chapter 22 governing access to public records. Because litigants' access to *confidential* records may be subject to a protective order, we must decide whether the records at issue are confidential. We set forth an overview of chapter 22 to provide context before we interpret section 22.7(5), the specific exemption applying to police investigative reports. Finally, we address whether the district court properly balanced the competing goals of confidentiality and transparency in denying defendants' motion for a protective order for the police reports.

**A. The Interplay Between Iowa's Open Records Act and the Discovery Rules.** "[T]he philosophy underlying our discovery rules is that 'litigants are entitled to every person's evidence, and the law favors full access to relevant information.' " *Mediacom,* 682 N.W.2d at 66 (quoting *State ex rel. Miller v. Nat'l Dietary Research, Inc.,* 454 N.W.2d 820, 822–23 (Iowa 1990)). For that reason, "the district court should liberally construe our discovery rules." *Id.* "Upon motion by a party . . . and for good cause shown," however, a court may enter a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Iowa R. Civ. P. 1.504(1).

The Mitchells sought the police investigative reports under the discovery rules as litigants suing Officer Jones and his employer, the City of Cedar Rapids. We have previously addressed the tension between our discovery rules and the confidentiality provisions in Iowa Code section 22.7. In *Mediacom,* we observed, "Iowa Code chapter 22 pertains to parties seeking access to government documents and ordinarily has no application to discovery of such information in litigation." 682 N.W.2d at 69. Iowa Code section 22.7 does not create a "true privilege against discovery of . . . confidential information." *See id.* at 66. "[T]here is nothing in section 22.7 that suggests the legislature intended to limit the discovery rights of litigants in cases involving governmental entities." *Id.* at 69. "To the contrary, section 22.7 indicates the opposite because it allows disclosure upon a court order." *Id.* "[S]ection 22.7 does not trump our discovery rules." *Id.* Nevertheless, the confidentiality the legislature prescribed for certain government records can be safeguarded through a protective order allowing the litigants use of the records in the lawsuit while preventing disclosure to the public. *See id.* at 67 (noting

"rule 1.504, regarding protective orders, comes into play" to shield confidential information from disclosure to nonparties).[5]

**B. An Overview of Iowa's Freedom of Information Act.** Iowa Code chapter 22, the Open Records Act, is also known as the Iowa Freedom of Information Act. *City of Riverdale v. Diercks*, 806 N.W.2d 643, 645 (Iowa 2011). "The general assembly made the decision to open Iowa's public records." *Atlantic Cmty. Sch. Dist.*, 818 N.W.2d at 232. "The Act essentially gives all persons the right to examine public records . . . [but] then lists specific categories of records that must be kept confidential . . . ." *Id.* at 233. "The general assembly [thereby] created and fixed the limitations on disclosure." *Id.* at 232.

"The purpose of [chapter 22] is 'to open the doors of government to public scrutiny [and] to prevent government from secreting its decision-making activities from the public, on whose behalf it is its duty to act.'" *Diercks*, 806 N.W.2d at 652 (alteration in original) (quoting *Rathmann v. Bd. of Dirs.*, 580 N.W.2d 773, 777 (Iowa 1998)). "There is a presumption in favor of disclosure" and "a liberal policy in favor of access to public records." *Hall v. Broadlawns Med. Ctr.*, 811 N.W.2d 478, 485 (Iowa 2012). "Disclosure is the rule, and one seeking the protection of one of the statute's exemptions bears the burden of demonstrating the

---

[5]Federal authorities likewise recognize that statutory confidentiality provisions do not generally create *privileges* against civil discovery but may warrant judicial protective orders to prevent public disclosure of confidential information produced to a litigant. *See, e.g., Laxalt v. McClatchy*, 809 F.2d 885, 889–91 (D.C. Cir. 1987) (vacating order denying production of FBI investigative files and remanding for consideration of protective order); *Cienfuegos v. Office of the Architect of the Capitol*, 34 F. Supp. 3d 1, 2 (D.D.C. 2014) (holding that statutory confidentiality for congressional employee dispute resolution procedures "does not give rise to an evidentiary privilege[,]" and "permit[ting] disclosure subject to a protective order"); *see also People ex rel. Birkett v. City of Chicago*, 705 N.E.2d 48, 51–52 (Ill. 1998) (surveying federal cases declining to equate FOIA exemptions with discovery privileges while noting "there are safeguards inherent in the discovery process, such as the use of protective orders, which serve to shield the government's interest in maintaining confidentiality").

exemption's applicability." *Diercks*, 806 N.W.2d at 652 (quoting *Clymer v. City of Cedar Rapids*, 601 N.W.2d 42, 45 (Iowa 1999)).

Iowa Code section 22.7 currently has seventy-three enumerated exemptions from the disclosure requirements. "Although we should not thwart legislative intent, the specific exemptions contained in freedom of information statutes are to be construed narrowly." *Iowa Film Prod. Servs.*, 818 N.W.2d at 219 (quoting *Hall*, 811 N.W.2d at 485). "We have also stated, however, that 'where the legislature has used broadly inclusive language in the exception, we do not mechanically apply the narrow-construction rule.'" *Atlantic Cmty. Sch. Dist.*, 818 N.W.2d at 233 (quoting *DeLaMater v. Marion Civil Serv. Comm'n*, 554 N.W.2d 875, 878 (Iowa 1996)). Against that backdrop, we turn to Iowa Code section 22.7(5).

**C. The Protection Afforded Police Investigative Reports Under Iowa Code Section 22.7(5).** Neither the district court nor our court has had the opportunity to review in camera the police reports at issue. The documents at the heart of this appeal are not in the court record. We proceed categorically by addressing the interpretation of the operative statutory language.

The defendants rely on section 22.7(5) together with section 622.11, which provides, "A public officer cannot be examined as to communications made to the public officer in official confidence, when the public interests would suffer by the disclosure." Iowa Code § 622.11; *see id.* § 22.7(5). Although we have held other privileges codified in chapter 622 are testimonial only,[6] "the privilege [in section 622.11] may

---

[6]*See, e.g.*, *Roosevelt Hotel Ltd. P'ship v. Sweeney*, 394 N.W.2d 353, 355 (Iowa 1986) ("The physician–patient rule provided in section 622.10 is an evidentiary rule rather than a substantive right.").

be invoked at any stage of proceedings where confidential communications would otherwise be disclosed." *State ex rel. Shanahan v. Iowa Dist. Court*, 356 N.W.2d 523, 528 (Iowa 1984). Taken together Iowa Code section 22.7(5) and section 622.11 provide "assurance to all persons upon whom law enforcement officials rely that 'official confidentiality attends their conversations and may protect from public access the officers' reports of what they have said.' " *Hawk Eye*, 521 N.W.2d at 753 (quoting *Shanahan*, 356 N.W.2d at 528). "The privilege cloaking these communications, however, is qualified, not absolute." *Id.*

The Mitchells argue that police investigative reports that may be confidential during an "ongoing investigation" lose that status when the investigation is closed. The defendants contend otherwise. To decide this question, we begin with the text of the exemption. Section 22.7 provides,

> The following public records shall be kept confidential, unless otherwise ordered by a court, by the lawful custodian of the records, or by another person duly authorized to release such information:
>
> . . . .
>
> 5. Peace officers' investigative reports, privileged records or information specified in section 80G.2, and specific portions of electronic mail and telephone billing records of law enforcement agencies if that information is part of an ongoing investigation, except where disclosure is authorized elsewhere in this Code.[7] However, the date, time, specific location, and immediate facts and circumstances surrounding a crime or incident shall not be kept confidential under this section, except in those unusual circumstances where disclosure would plainly and seriously

---

[7]Other provisions of the Iowa Code govern certain types of reports made to law enforcement. *See, e.g.*, Iowa Code § 321.271 (discussing confidentiality of motor vehicle accident reports and access to those reports by the drivers and their attorneys); *see also Shannon by Shannon v. Hansen*, 469 N.W.2d 412, 415 (Iowa 1991) (discussing interplay among Iowa Code sections 22.7(5), 321.271, and 622.11 and affirming discovery order in civil dramshop action allowing disclosure of witness statements taken during motor vehicle accident investigation).

jeopardize an investigation or pose a clear and present danger to the safety of an individual. Specific portions of electronic mail and telephone billing records may only be kept confidential under this subsection if the length of time prescribed for commencement of prosecution or the finding of an indictment or information under the statute of limitations applicable to the crime that is under investigation has not expired.

Iowa Code § 22.7(5).

The Mitchells argue the term "ongoing investigation" in the first sentence of section 22.7(5) modifies "investigative reports" such that the report's confidential status ends when the police investigation closes. The defendants argue investigative reports remain confidential at all times and the term "ongoing investigation" refers only to email and phone records. The legislative history is instructive.

Section 22.7(5) was most recently amended in 2017 to add the language, "privileged records or information specified in section 80G.2," a phrase separated by commas from other language in the first sentence. 2017 Iowa Acts ch. 122, § 1 (codified at Iowa Code § 22.7(5) (2018)). The same bill enacted Iowa Code chapter 80G effective July 1, 2017. *Id.* §§ 3–6 (codified at Iowa Code §§ 80G.1–.4).[8]

The 2006 amendment to Iowa Code section 22.7(5) sheds more light. 2006 Iowa Acts ch. 1122, § 1 (codified at Iowa Code § 22.7(5) (2007)).[9] The 2006 amendment added this language to the first sentence: "and specific portions of electronic mail and telephone billing

---

[8]Iowa Code section 80G.2 enumerates certain matters that a police officer may not be compelled to disclose when testifying in a criminal proceeding, such as personal identifying information of the officer or the officer's family or the identity of a confidential informant. Section 80G.2 provides for a balancing of interests if a criminal defendant argues nondisclosure of this information would hinder his or her ability to present a defense. *Id.* § 80G.2(2). The defendants are not relying on chapter 80G in this appeal.

[9]An earlier bill amending section 22.7(5) placed the same language about electronic mail and telephone billing records in a separate subsection 22.7(5A). *See* H.F. 2316, 81 G.A., 2d Sess. § 1 (Iowa 2006) (withdrawn).

records of law enforcement agencies if that information is part of an ongoing investigation." *Id.* Again, as with the phrase added in 2017, the language added to the first sentence in 2006 is separated by a comma from the preceding language about police investigative reports. *Id.* The 2006 amendment also added the final sentence of section 22.7(5) timing out the confidentiality of email and phone records upon the expiration of the statute of limitations. *Id.* The final sentence only addresses email and phone records and does not mention police investigative reports— another indication that email and phone records are treated differently than police investigative reports. *See id.*

Defendants rely on this legislative history and on a canon of construction, the "last preceding antecedent."

> Under the doctrine of last preceding antecedent, qualifying words and phrases refer only to the immediately preceding antecedent, unless a contrary legislative intent appears. Evidence of a contrary legislative intent can arise when a comma separates the qualifying phrase from the antecedent. In this circumstance, the qualifying phrase generally applies to all antecedents.

*Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Shell Oil Co.*, 606 N.W.2d 376, 380 (Iowa 2000) (citations omitted); *see also Bearinger v. Iowa Dep't of Transp.*, 844 N.W.2d 104, 109 (Iowa 2014); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 144–46 (2012) (discussing last antecedent canon). A clear indication of legislative intent can override this canon. *Shell Oil Co.*, 606 N.W.2d at 380.

We agree with the defendants that the legislative history of Iowa Code section 22.7(5) (2018) and the last antecedent canon taken together indicate that "ongoing investigation" in the first sentence refers to email and phone records, not "police investigative reports." The placement of

commas supports our conclusion. The 2006 amendment added language with no comma separating the phrase about email and phone records from the limiting term "ongoing investigation" while a comma sets off the preceding language, including "police investigative reports." The last sentence reinforces our conclusion. If police investigative reports were in the same category as email and phone records, with confidentiality requiring an open investigation and ending with the expiration of the statute of limitations, we would see "police investigative reports" included in the last sentence. We hold that police investigative reports do not lose their confidential status under section 22.7(5) when the investigation closes.

Our resolution of this interpretive issue does not end our analysis. In denying the defendants' motion for protective order, the district court relied on the second sentence of section 22.7(5):

> [T]he date, time, specific location, and immediate facts and circumstances surrounding a crime or incident shall not be kept confidential under this section, except in those unusual circumstances where disclosure would plainly and seriously jeopardize an investigation or pose a clear and present danger to the safety of an individual.

Iowa Code § 22.7(5). The district court applied the balancing test we used in *Hawk Eye* to adjudicate confidentiality claims based on both section 22.7(5) and section 622.11. We must decide whether *Hawk Eye* or *Atlantic Community School District* governs this dispute over access to the police investigative reports.

1. *Which case applies*—Hawk Eye *or* Atlantic Community School District*?* In *Hawk Eye,* a case involving a similar controversy, a Burlington newspaper reporter "wrote a series of articles aimed at local reaction to the highly publicized beating of Rodney King by Los Angeles police officers." 521 N.W.2d at 751. The reporter learned of a civil suit

against a Burlington police officer. *Id.* The reporter approached the police chief and asked for comment. *Id.* The chief was unaware of the allegations and immediately requested an independent investigation by the Iowa Department of Criminal Investigations (DCI) "to determine whether [the officer] had engaged in criminal conduct or had violated departmental rules and regulations." *Id.* at 751–52. The DCI investigated and provided a confidential report to the county attorney and police chief. The chief concluded the officer had not breached any department rules or regulations, and the county attorney concluded there was not enough evidence to prosecute the officer for assault. *Id.* at 752.

The publisher of the newspaper requested a copy of the DCI report from the county attorney, who refused. *Id.* The newspaper sought a writ of mandamus to compel release of the report. *Id.* Meanwhile, the tort case against the officer went to trial. *Id.* The same witnesses interviewed by the DCI investigator also testified at the jury trial. *Id.* The jury returned a verdict for damages against the officer and the city. *Id.* The city later settled a second lawsuit alleging excessive force against the same officer over a separate incident. *Id.*

The newspaper argued the public interest required disclosure of the DCI report to evaluate a possible cover-up by the officials who had declined to prosecute or discipline the officer. *Id.* The county attorney argued disclosure would impede future investigations. *Id.* The district court ordered disclosure of the DCI report with some redactions of criminal history. *Id.*

On appeal, the county attorney argued that the report was confidential under Iowa Code section 22.7(5) and section 622.11. *Id.* We stated, "An official claiming the privilege must satisfy a three-part test:

(1) a public officer is being examined, (2) the communication was made in official confidence, and (3) the public interest would suffer by disclosure." *Id.* at 753; *see also Shanahan*, 356 N.W.2d at 527–31 (adopting this "sensitive weighing process," the same three-part test, under a prior version of section 22.7(5) and section 622.11 to determine that litigants were not entitled to DCI files for two unsolved homicides).

*Hawk Eye* addressed the same arguments the defendants make today—that public disclosure of the investigative reports would have a chilling effect on police investigations.

> Determining where the line falls between public harm and public good requires weighing the relative merits of the interests at stake. We have long recognized that confidentiality encourages persons to come forward with information, whether substantiated or not, that might be used to solve crimes and deter criminal activity. Secrecy is especially vital where reports are based on confidential informants, persons indispensable to successful police work but who frequently fear intimidation and reprisal. Furthermore, nondisclosure permits law enforcement officials the necessary privacy to discuss findings and theories about cases under investigation.

*Hawk Eye*, 521 N.W.2d at 753 (citations omitted). But we continued by noting "[o]ther case-specific factors, such as the nature of the investigation and whether it is completed or ongoing, may tip the balance in favor of public disclosure." *Id.*

In affirming the order compelling release of the DCI report in 1994, we noted factors also present in today's case: the absence of any confidential informants or "named but innocent suspects," or any ongoing police investigation, and the presence of a heightened public interest in police use of force. *See id.* at 753–54. We stated, "There can be little doubt that allegations of leniency or cover-up with respect to the disciplining of those sworn to enforce the law are matters of great public

concern." *Id.* at 754. We concluded based on the factual record that "any public harm created by the disclosure of the DCI investigatory report is far outweighed by the public harm accruing from its nondisclosure." *Id.* The Mitchells urge us to make the same determination here.

The defendants contend the *Hawk Eye* balancing test has been superseded by *Atlantic Community School District. See* 818 N.W.2d 235–36. In *Atlantic Community School District*, we clarified our approach to section 22.7's exemptions.

> [T]he courts will usually first examine the specific statutory provision involved to see if the statute delineates exactly what types of records or other information are considered private and thus subject to the public disclosure exemption. If, however, the particular record, report, or other information sought to be disclosed is not specifically listed . . . the courts most often will apply general privacy principles, which examination involves a balancing of conflicting interests—the interest of the individual in privacy on the one hand against the interest of the public's need to know on the other.

*Id.* at 234 (quoting *DeLaMater*, 554 N.W.2d at 879). We elaborated that if "by looking at the language of the statute, our prior caselaw, and caselaw from other states" we determine the information requested fits into the categorical exemption of Iowa Code section 22.7(11), "then our inquiry ends. If it does not, we will then apply the balancing test under our present analytical framework." *Id.* at 235.

In *Atlantic Community School District*, the ACLU sought records relating to the identities and specific disciplinary consequences of two school employees who had conducted a strip search of five female high school students after a theft. *Id.* at 232. The school district named the employees but refused to disclose the discipline imposed, arguing it was confidential and exempt from disclosure under section 22.7(11), which

protects "[p]ersonal information in *confidential* personnel records." *Id.* at 233 (emphasis added) (quoting Iowa Code § 22.7(11) (2009)). The ACLU made an open records request under chapter 22 and then sought an injunction ordering the district to comply with the request. *Id.* at 232. We concluded that the employee disciplinary information was confidential under section 22.7(11). *Id.* at 236. Noting that numerous cases have upheld the confidentiality of performance evaluations in personnel files, we determined that using a balancing test would undermine the legislature's intent in categorically removing these documents from public view. *Id.* at 235–36.

We can easily harmonize *Hawk Eye* and *Atlantic Community School District.* *Atlantic Community School District* controls when the records at issue fall within a categorical exemption in section 22.7, such as the "confidential personnel records" in section 22.7(11). *See id.* No balancing of interests is necessary for such an exemption. *Id.* at 236. The legislature has performed its own balancing and made the policy choice to protect such records categorically. *Atlantic Community School District* did not overrule or even cite *Hawk Eye*, which remains good law for disputes over access to police investigative reports under section 22.7(5), a provision with its own legislatively prescribed balancing test in the second sentence.

We conclude that the legislature has acquiesced in our interpretation of section 22.7(5). We first used the three-part balancing test thirty-five years ago in *Shanahan*, 356 N.W.2d at 527, and then again in 1994 in *Hawk Eye*, 521 N.W.2d at 753. We have not retreated from that approach in any subsequent case applying Iowa Code section 22.7(5). The legislature has twice amended section 22.7(5) since *Hawk Eye*. Neither amendment overruled *Hawk Eye*'s balancing test for

police investigative reports involving no confidential informant. *See Ackelson v. Manley Toy Direct, L.L.C.*, 832 N.W.2d 678, 688 (Iowa 2013) (discussing the doctrine of legislative acquiescence). We hold that *Hawk Eye* remains the controlling precedent for disputes over access to police investigative reports.

2. *Application of the* Hawk Eye *balancing test in this case.* We conclude the district court properly applied *Hawk Eye.* In both cases, the police investigation had been completed without any confidential informant or unidentified suspect. In both cases, one officer injured or killed a civilian in separate incidents. Then and now, the dispute arose against the backdrop of a national debate over the use of force by police on unarmed African-Americans—Rodney King in 1991 and Michael Brown in 2014. The defendants in both cases advanced cogent arguments that disclosure of the police investigatory reports would impede future investigations. Then and now, on balance, the public interest favors disclosure.

The record in this case is devoid of evidence that disclosure would harm any specific individual. More generally, the district court noted,

> To the extent that law enforcement officer communications with other officers might initially be made in confidence, there is still an expectation that the communicating officer might be expected to testify in a public proceeding especially if it involves something the officer personally witnessed.

The same can be said of civilian witnesses.

The defendants contend they have already provided the "date, time, specific location and immediate facts and circumstances surrounding" the incident. In our view, the district court acted within its discretion under *Hawk Eye*, consistent with the second sentence of Iowa Code section 22.7(5), by limiting the order compelling disclosure to

"investigative reports or electronic communications generated or filed within 96 hours of the incident." The court directed the parties to handle remaining confidentiality issues as to specific records by redaction or further proceedings.

The defendants argue that disclosure would have a chilling effect on the candor expected for internal investigations. The district court addressed that concern by excluding from the order compelling production those "reports or memorandum generated solely for purposes of a police internal review of the incident."

The defendants also argue that further disclosure and the resulting publicity could taint the jury pool. We believe that concern can be addressed during jury selection. The district court noted, "The alleged facts of the incident have been the subject of wide media coverage and broad public discussion." The court continued, "Public disclosure of these reports in a county of over 200,000 people may enhance the public discussion but should not jeopardize any party's right to a fair trial." We agree. We also note that the attorneys must comply with Iowa Rule of Professional Conduct 32:3.6, which prohibits an attorney from making extrajudicial statements that "will have a substantial likelihood of materially prejudicing an adjudicative proceeding."

Throughout the United States, highly publicized police shootings have sparked debates nationally about race, policing, and community relations. "[I]t goes without saying that police misconduct is a matter of public concern." *Martinez v. Hooper*, 148 F.3d 856, 859 (7th Cir. 1998). As we previously noted,

> The image presented by police personnel to the general public "is vitally important to the police mission." Additionally, such image "also permeates other aspects of the criminal justice system and impacts its overall success."

For these reasons, "police officers must earn and maintain the public trust at all times by conducting themselves with good judgment and sound discretion."

*Civil Serv. Comm'n v. Johnson,* 653 N.W.2d 533, 538 (Iowa 2002) (quoting *City of Fort Dodge v. Civil Serv. Comm'n,* 562 N.W.2d 438, 440 (Iowa Ct. App. 1997)).[10] We conclude the district court did not abuse its discretion in applying the *Hawk Eye* balancing test.

**D. Whether the Defendants Showed Good Cause for a Protective Order.** The defendants argue the district court abused its discretion by denying their motion for a protective order. They note the Mitchells are obtaining the police investigative reports for their use in the litigation, and the proposed protective order simply prevents disclosure to the news media and other nonparties. The Mitchells have failed to show how such a protective order would impede their ability to prove their claims.

But it is the defendants' burden to establish good cause through "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Comes v. Microsoft Corp.*, 775 N.W.2d 302, 305 (Iowa 2009) (quoting *Nat'l Dietary Research*, 454 N.W.2d at 823); s*ee also Iowa Film Prod. Servs.*, 818 N.W.2d at 230 (rejecting argument against disclosure that "was presented entirely at an abstract level" without evidentiary proof).

> A district court should consider three criteria when evaluating the factual showing establishing good cause: (1) whether the harm posed by dissemination will be substantial and serious; (2) whether the protective order is precisely and narrowly drawn; and (3) whether any alternative means of protecting the public interest is available that would intrude less directly on expression.

---

[10]The Mitchells' tort claims are pending, and there has been no adjudication of misconduct by Officer Jones.

*Comes*, 775 N.W.2d at 305–06. "[T]hese criteria strike a balance between the policy favoring discovery and free expression on one side and a party's interest in avoiding commercial damage and preventing an abuse of discovery on the other." *Id.* at 306 (alteration in original) (quoting *Nat'l Dietary Research*, 454 N.W.2d at 823).

The parties' arguments for and against the protective order are addressed in our review of the district court's application of the *Hawk Eye* balancing test. As set forth above, we hold the police investigative reports at issue are not exempt from public disclosure under *Hawk Eye.* A protective order limiting disclosure to third parties would be pointless here when any member of the public could obtain the same reports through an Iowa Code chapter 22 open records request. We determine that the district court did not abuse its discretion by denying the defendants' motion for protective order.

## IV. Disposition.

For these reasons, we affirm the district court's ruling denying the defendants' motion for a protective order.

**AFFIRMED.**

All justices concur except Appel, J., who concurs specially.

**APPEL**, **Justice (concurring specially).**

I write separately to emphasize what I believe is an unstated assumption in the majority opinion—in determining whether there is good cause for a protective order, an exemption under the open records law is merely a factor that may be considered by the district court. That assumption furthers the legislative intent behind Iowa's discovery rules and open records law, and is consistent with our precedent and that of other jurisdictions.

The open records law, Iowa Code ch. 22 (2018), establishes a distinct, narrow regime that permits the public access to certain public records. It provides a conflict resolution mechanism for aggrieved persons who claim they have been denied access to public records by governing bodies.

The public records act is generally distinct from our discovery rules. *See* Iowa R. Civ. P. 1.500–.517. In *Mediacom Iowa, L.L.C. v. Incorporated City of Spencer*, we explained that our open records law "ordinarily has no application to discovery of [government documents] in litigation." 682 N.W.2d 62, 69 (Iowa 2004). A governmental party engaged in litigation cannot refuse to produce a document requested in discovery on the basis that the document would be exempt from production pursuant to an open records request. *See id.*

Our view in this regard is similar to federal law. Under federal law, the Freedom of Information Act (FOIA) "was not intended to supplement or displace rules of discovery." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 153, 110 S. Ct. 471, 475 (1989). Many federal decisions hold that a document exempt from production through an open record law may still be produced in discovery. *See, e.g., Kamakana v. City of*

*Honolulu*, 447 F.3d 1172, 1185 (9th Cir. 2006) ("[E]xempt documents [under FOIA] are not automatically privileged in civil discovery."); *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1344 (D.C. Cir. 1984) ("If information in government documents is exempt from disclosure to the general public under FOIA, it does not automatically follow the information is privileged . . . and thus not discoverable in civil litigation."); *Kerr v. U.S. Dist. Ct.*, 511 F.2d 192, 197 (9th Cir. 1975) (stating that FOIA exemptions were not intended to create evidentiary privileges in civil discovery), *aff'd*, 426 U.S. 394, 96 S. Ct. 2119 (1976); *Pleasant Hill Bank v. United States*, 58 F.R.D. 97, 99 (W.D. Mo. 1973) ("Even if we posit arguendo that the [government] documents are exempt from disclosure, it does not necessarily follow that they are privileged for purposes of civil discovery.").

Other states, too, view their state open records law as separate from rules of discovery, and therefore, an exemption in the former does not preclude production pursuant to the latter. *See, e.g.*, *Martinelli v. Dist. Ct.*, 612 P.2d 1083, 1093–94 (Colo. 1980) (en banc) ("We . . . hold that the Colorado open records laws . . . do not, ipso facto, exempt the [government documents] from discovery in civil litigation."); *Fla. House of Representatives v. Romo*, 113 So. 3d 117, 127–28 (Fla. Dist. Ct. App. 2013) (stating that a government document exempt from production under the state open records law must be produced in discovery unless otherwise privileged or a balancing of the parties' interests weighs in favor of keeping the document confidential), *quashed on other grounds by League of Women Voters of Fla. v. Fla. House of Representatives*, 132 So. 3d 135, 138 (Fla. 2013); *Tighe v. City of Honolulu*, 520 P.2d 1345, 1348 (Haw. 1974) ("The very broad discovery specifically granted to litigants . . . cannot be said to be limited by the terms of a charter

provision directed toward regulation of the entirely different situation of the general exploration of public records by any citizen during general business hours."); *In re Subpoena Duces Tecum*, 840 N.E.2d 470, 475 (Mass. 2006) ("Discovery, by its nature, is quite broad.  The public records law does not restrict this breadth." (Citations omitted.)); *Truel v. City of Dearborn*, 804 N.W.2d 744, 748 (Mich. Ct. App. 2010) ("[T]he discovery rules and the [state open records law] represent 'two independent schemes for obtaining information.'  Therefore, discovery in a civil action and the [state open records law] are subject to different procedures and enforcement mechanisms." (quoting *Cent. Mich. Univ. Supervisory-Tech. Ass'n, MEA/NEA v. Bd. of Trs.*, 567 N.W.2d 696, 698 (Mich. Ct. App. 1997) (Holbrook, J., concurring))).  For instance, in *Boston Police Superior Officers Federation v. City of Boston*, 608 N.E.2d 1023, 1027 (Mass. 1993), the Massachusetts Supreme Judicial Court held that a trial judge properly required the City of Boston to produce, in discovery, logs of the internal affairs division that may be exempt from production through the state open records law.  The court explained that "the public record law and its exceptions do not restrict the . . . power to subpoena documents."  *Id.*

The rationales for those decisions are based on "the essential differences between the discovery process and the FOIA request."  Janice Toran, *Information Disclosure in Civil Actions: The Freedom of Information Act and the Federal Discovery Rules*, 49 Geo. Wash. L. Rev. 843, 851 (1981) [hereinafter Toran].  While a litigant can obtain discovery of things "relate[d] to the claim or defense of the party seeking discovery or to the claim or defense of any other party" so long as the things are "reasonably calculated to lead to the discovery of admissible evidence," Iowa R. Civ. P. 1.503(1); *see* Toran, 49 Geo. Wash. L. Rev. at 851, the relevance of

materials to litigation or other matters is irrelevant to disclosure under open records laws, *see* Toran, 49 Geo. Wash. L. Rev. at 852. That difference requires the court to look beyond the mere presence of an open records exemption in determining whether to allow discovery. *Id.*; *see, e.g.*, *Jupiter Painting Contracting Co. v. United States*, 87 F.R.D. 593, 597 (E.D. Pa. 1980) ("[A] FOIA exemption cannot even indirectly delimit claims of privilege since it does not take into account the degree of need for the information exhibited by the claimant."). Further, open records law exemptions do not limit civil discovery because of "the distinction between open disclosure to the public at large under FOIA and the much more restricted disclosure which occurs under the discovery rules." Mark S. Wallace, *Discovery of Government Documents and the Official Information Privilege*, 76 Colum. L. Rev. 142, 153–54 (1976).

The latter consideration bears further consideration because it is arguably germane to the issue in the case before us. Some courts have allowed discovery of documents exempt from open records requests because open records laws apply to disclosure to the public generally as opposed to private litigants. *See, e.g.*, *Denny v. Carey*, 78 F.R.D. 370, 373 (E.D. Pa. 1978) ("Exemption from the Freedom of Information Act . . . does not create independently any evidentiary privilege; the effect of such exclusion, rather, is only to permit the withholding of these categories of information from the public generally."); *Douglas v. Windham Super. Ct.*, 597 A.2d 774, 776 n.2 (Vt. 1991) ("Petitioner has noted that the Vermont Access to Public Records Act, 1 V.S.A. § 317(b)(5), has an exception from public disclosure for 'disciplinary investigation' records of a 'professional licensing agency.' This exception deals with disclosure to the public generally, not disclosure in response to discovery in litigation. It does not create a privilege."); *Maclay v. Jones*, 542 S.E.2d 83, 89 (W. Va. 2000)

("[W]e hold that the provisions of this state's FOIA, which address confidentiality as to the public generally, were not intended to shield law enforcement investigatory materials from a legitimate discovery request when such information is otherwise subject to discovery in the course of civil proceedings.").

The open records law may inform a district court's decision on a protective order, but it "does not trump our discovery rules." *Mediacom*, 682 N.W.2d at 69. This is because

> there is nothing in [Iowa Code] section 22.7 that suggests the legislature intended to limit the discovery rights of litigants in cases involving governmental entities. To the contrary, section 22.7 indicates the opposite because it allows disclosure upon a court order.

*Id.*; *see also Laxalt v. McClatchy*, 809 F.2d 885, 889 (D.C. Cir. 1987) (refusing to infer qualified discovery privilege from congressional silence, especially where Congress expressly permitted court-ordered disclosure). Moreover, "[i]f a[] FOIA exemption is the prime determinant in the balancing process, the needs of one party—the non-governmental party— are effectively disregarded," Toran, 49 Geo. Wash. L. Rev. at 853, even though our discovery rules permit consideration of the requesting party's need for discovery in decisions allowing or limiting discovery, *see* Iowa R. Civ. P. 1.504(1) (stating that a protective order should be granted only where "justice requires" and "for good cause shown"); *see also* Iowa R. Civ. P. 1.503(1) (providing for discovery so long as "the information sought appears reasonably calculated to lead to the discovery of admissible evidence"); *Mediacom*, 682 N.W.2d at 66 ("[T]he philosophy underlying our discovery rules is that 'litigants are entitled to every person's evidence, and the law favors full access to relevant information.'" (quoting *State ex rel. Miller v. Nat'l Dietary Research, Inc.*,

454 N.W.2d 820, 822–23 (Iowa 1990))). Therefore, giving conclusive weight to an open records exemption in deciding on a protective order would thwart legislative intent.

Other courts have considered an open records exemption as influencing, but not controlling, a decision on whether to issue a protective order preventing public dissemination of materials produced in discovery. In *Henry v. Centeno*, No. 10 C 6364, 2011 WL 3796749, at *3 (N.D. Ill. Aug. 23, 2011), the court said that a state FOIA exemption does not necessarily mean that documents obtained through discovery cannot be disseminated to the public, but it may provide guidance. The court explained,

> The question before the court in ruling on this proposed protective order . . . is not the FOIA-conferred right of "merely curious members of the public" to access certain information, but rather a litigant's (albeit limited) First Amendment right to disseminate information properly obtained through pre-trial discovery. The court must take care not to conflate rules regarding a universal "public right to know" with rules regarding a litigant's right to disseminate. "Such conflation, like any other Pavlovian-type generalization, is likely to generate an overly simplistic answer to the more precise question posed in a particular case." That a FOIA exemption may curtail the general right of access to information that FOIA otherwise bestows upon the public does not necessarily restrain an individual's right to share the same information obtained by other means.
>
> FOIA can, nevertheless, provide guidance as to whether good cause exists for a proposed protective order, as well as guidance as to the nature of the public's interest. Therefore, having rejected as a matter of law defendants assertion that IFOIA "requires" a protective order to be entered, the court will next consider what guidance IFOIA offers as to whether a protective order should be entered.

*Id.* (citations omitted) (quoting *Brown v. City of Chicago*, No. 09 C 6506, 2011 WL 222840, at *2 (N.D. Ill. Jan. 24, 2011)). In *Laxalt*, the D.C. Circuit explained that while a statutory ban on publication by a

government agency does not delimit the ability to obtain a government document through discovery,

> [t]he fact that a document is subject to the Privacy Act is not, however, irrelevant to the manner in which discovery should proceed. Although discovery standards . . . permit access to relevant documents protected by the Act, those same . . . standards give the District Court ample discretion to fashion appropriate protective orders upon a showing of "good cause." . . .
>
> . . . .
>
> . . . [A]s is true with respect to other statutory publication bans, the applicability of the Privacy Act to the materials requested is a relevant factor for the District Court to consider in determining the appropriate scope and manner of discovery in a given case.

809 F.2d at 889 (citation omitted). The court then suggested that, in fashioning a protective order, a court could consider a party's ability to make documents public. *Id.* at 890 n.23. Another decision viewing an open records exemption as influential but not controlling is *In re National Prescription Opiate Litigation*, 325 F. Supp. 3d 833, 838–40 (N.D. Ohio 2018).

Similarly, courts considering the converse situation find an open records law persuasive but not controlling. In *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 775 (3d Cir. 1994), a group of newspapers sought access to a settlement agreement made confidential by a protective order. The court said,

> [W]e hold that where it is likely that information is accessible under a relevant freedom of information law, a strong presumption exists against granting or maintaining an order of confidentiality whose scope would prevent disclosure of that information pursuant to the relevant freedom of information law. In the good cause balancing test, this strong presumption tilts the scales heavily against entering or maintaining an order of confidentiality.

*Id.* at 791.

Viewing the open records law as informing—but not controlling—a district court's decision on a protective order is, I think, implicit in the majority opinion. The majority opinion explains that "[l]itigants suing the government ordinarily may obtain relevant records through discovery notwithstanding confidentiality provisions in Iowa Code section 22.7, but a protective order *may* be required precluding disclosure to nonparties," (emphasis added), "litigants' access to *confidential* records *may* be subject to a protective order," (second emphasis added), and "[f]ederal authorities likewise recognize that statutory confidentiality provisions do not generally create *privileges* against civil discovery but *may* warrant judicial protective orders" (second emphasis added). The majority concludes that "[t]he district court did not abuse its discretion by denying the requested protective order . . . [and] balanc[ing] the competing interests in confidentiality and transparency." The majority's reasoning, it seems to me, provides that an exemption from the open records law does not control the decision on a protective order.

Accordingly, I specially concur.