**IN THE COURT OF APPEALS OF IOWA**

No. 20-0522
Filed September 23, 2020

**IN THE INTEREST OF T.J. and D.J.,**
**Minor Children,**

**J.E., Grandmother,**
    Appellant.

_____

Appeal from the Iowa District Court for Clay County, Andrew Smith, District

Associate Judge.

A grandmother appeals the denial of her petition for adoption. **AFFIRMED.**

Elizabeth K. Johnson, Spirit Lake, for appellant.

Thomas J. Miller, Attorney General, and Charles K. Phillips, Assistant

Attorney General, for appellee State.

Shawna L. Ditsworth, Spirit Lake, attorney and guardian ad litem for minor

children.

Considered by Bower, C.J., and May and Ahlers, JJ.

**BOWER, Chief Judge.**

A grandmother appeals the dismissal of her petitions to adopt two of her grandchildren.  The children's guardian did not consent to the adoption, and the adoption was not in the children's best interests.  We affirm.

### I. Background Facts & Proceedings

J.E. is the paternal grandmother of T.J., born in 2015, and D.J., born in 2014.  In January 2017, the children were removed from their parents and placed in foster care under the supervision of the department of human services (DHS).[1]  In February 2018, the parents' rights were terminated.  The order terminating the parents' rights placed custody and guardianship of the children with DHS "for purposes of adoption."

In August, DHS placed the children with the paternal grandmother and her significant other as a potential adoptive home.[2]  DHS retained custody and guardianship of the children.  The grandmother is also guardian of and raising two other children of her daughter, Ja.E, who had an ongoing child-in-need-of-assistance (CINA) proceeding concerning another of her children.  During the home study required for placement, the grandmother and her significant other stated they were "able to set boundaries with [the father] just as they had done with their daughter [Ja.E.] in regards to [her] children."  The home study recommended the grandmother would need to "place boundaries on individuals

---

[1] At the time of the children's 2017 removal, the grandmother's home was "not safe" and the children could not be placed there.
[2] The grandmother was in a new home by August 2018.

who are not making healthy decisions even if these individuals are family members."

In January 2019, the grandmother's significant other died. He had provided transportation and cared for the children while the grandmother worked full-time. In May, the grandmother was diagnosed with a serious health issue. She did not notify DHS of her health problem, even when she learned it would require surgery.

On July 5, DHS signed a consent to adoption for the children. In mid-July, the grandmother filed petitions to adopt each child. A guardian ad litem (GAL) was appointed for the children, and the adoption hearing was scheduled for August 19.

On July 25, the grandmother underwent surgery for her health problem and expected a four-day hospital stay. She did not notify DHS or the GAL of her surgery or her absence from the home. Instead, she made arrangements with her other daughter, C.T., to watch the children. The grandmother designated her own mother and a family friend as persons to help C.T. take care of the children. She did not notify or obtain authorization from DHS or the GAL for C.T., her mother, or friend to care for the children.

The grandmother explained her lack of DHS notification and prior authorizations, "Because I didn't think about it for one. I was acting like a parent, you know, because I thought the adoption was already going through. . . . I didn't realize I had to have permission." When asked if it was a parent's responsibility to make sure the people staying with the children are appropriate caregivers, the grandmother answered, "In a way, no. That is picking up on people's backgrounds, being nosy. And [the people I selected] are probably the people that I would trust."

The grandmother suffered major complications following her surgery and, except for a brief discharge, was in the hospital until September 10.[3] C.T., who was watching the children, did not notify DHS of the complications. C.T. had Ja.E. provide care for the children while C.T. was at work.[4] Ja.E.'s DHS worker notified the adoption caseworker and, on August 6, the children were removed and placed in foster care. The adoption hearing was continued.

In September, DHS determined it would not return the children to the grandmother's care. DHS rescinded its consent to adoption because "[t]he plan of care that [J.E.] utilized for [the children] was not appropriate and placed the child[ren] at risk."

On December 20, 2019, and January 29, 2020, a hearing was held on the grandmother's petitions to adopt and her motions to intervene filed in the children's CINA cases.

During the hearing, the grandmother's witnesses provided some conflicting testimony whether the grandmother knew C.T. had to work while she was in the hospital and if she was aware Ja.E. would be taking care of the children in that event. The grandmother testified she did not authorize Ja.E to be around the children, unless C.T. had asked her when she was medicated in the hospital. The grandmother also testified she did not have any concerns with the children being in Ja.E.'s care, unless her boyfriend was there because "he's too rough."

The DHS adoption worker assigned to the children also testified. She noted concerns J.E.'s loss of her supportive significant other, Ja.E.'s involvement in the

---

[3] The grandmother's health problems resolved before the adoption/CINA hearing.
[4] Ja.E. cared for the children for about ten days before they were removed.

family and ongoing DHS involvement, and J.E.'s failure to report significant medical issues that affected the children's care. According to the adoption worker, during an August 5 phone call with the worker, J.E knew Ja.E. had taken care of the children for several days. The worker was concerned about the future choices J.E. would make regarding care for the children, and opined she did not possess the necessary judgment and protective capabilities to keep them safe. The adoption worker agreed it was in the children's best interests for the court to deny J.E.'s petitions for adoption.

At the end of the hearing, the children's GAL told the court "this adoption would not be in these children's best interests." The State agreed, citing "ongoing concerns and the contacts with unhealthy individuals in the past, as well as, . . . some questionable testimony with regard to what has happened since then."

The court denied the grandmother's petitions to adopt and her motions to intervene in the CINA proceedings. The grandmother appeals the denial of her adoption petitions.[5]

## II. Standard of Review

We review orders in adoption proceedings de novo. Iowa Code § 600.14(1) (2020). We give weight to the findings of the trial court, especially relating to the credibility of witnesses, but are not bound by them. *See* Iowa R. App. P. 6.904(3)(g). The paramount consideration is what is in the best interest of the children to be adopted. Iowa Code § 600.1(1).

---

[5] The grandmother attempted to appeal the CINA proceedings as well, but failed to file a notice of appeal with the district court. The supreme court dismissed the CINA appeals for lack of jurisdiction, stating that notice with the district court is a jurisdictional prerequisite.

**III. Analysis**

The statutory requirements for adoptions are established in Iowa Code chapter 600. Section 600.7 sets forth specific consent requirements before the court can grant the adoption. "An adoption petition *shall not be granted* unless the following persons consent to the adoption or unless the juvenile court or court makes a determination under subsection 4: (a) Any guardian of the person to be adopted." *Id.* § 600.7 (emphasis added). It is the right and duty of the children's guardian to determine whether to consent to the adoption. S*ee id.* § 232.2(21)(b)(5).

Although DHS—the children's guardian—had originally consented to the adoption, that consent was withdrawn after the children were removed from the grandmother's home prior to the adoption hearing. *See id.* § 600.7(3) ("A consent to the adoption may be withdrawn prior to the issuance of an adoption decree . . . by the filing of an affidavit of consent withdrawal with the juvenile court or court.").[6] Therefore, the consent requirement was not met and the court could not grant the adoption under section 600.7(1).

The court then turned to an exception to consent found under section 600.7(4). "If any person required to consent under [section 600.7] refuses to or cannot be located to give consent," the court then determines "whether, in the best interests of the person to be adopted and the petitioner, any particular consent shall be unnecessary to the granting of an adoption petition." *Id.* § 600.7(4). With DHS refusing to consent as the guardian and available at the hearing, the burden

---

[6] Consent may be withdrawn upon "verified indications that the adoption is not in the best interest of the child." Iowa Admin. Code r. 441–200.13(5).

to establish the exception is on the grandmother.[7] *Cf. Mitchell v. City of Cedar Rapids*, 926 N.W.2d 222, 229 (Iowa 2019) ("[O]ne seeking the protection of one of the statute's exemptions bears the burden of demonstrating the exemption's applicability.")

DHS's duty as the children's guardian and custodian is to make "decisions involving protection, education, and care and control" that are in the best interests of the children. Iowa Code § 232.2(21)(b)(6). The document rescinding DHS's consent to adopt included its reasons why withdrawing consent would be in the children's best interest:

> [J.E.] experienced major health issues that required hospitalizations. At least one of the hospitalizations was for a planned medical procedure. [J.E.] did not report this information to DHS so that [the children] could be placed in alternate care while [J.E.] was hospitalized. The plan of care that [J.E.] utilized for [the children] was not appropriate and placed the child[ren] at risk.

The juvenile court similarly expressed concern over the grandmother's protective capabilities. The court specifically discussed the lack of notification to DHS of the planned surgery and inadequate plan of care for the children during the surgery and resulting complications. The court noted, "[I]t is not clear that [the grandmother] has the ability to determine who is making healthy decisions, much less establish sufficient boundaries with respect to those people."

"The legislature, while giving the juvenile court continuing oversight consistent with the best interest of the child, did not give the juvenile court the right to establish custody or consent to adoption. Rather, these rights were specifically

---

[7] The grandmother argues DHS was unreasonable in rescinding its consent to the adoption and that allowing her to adopt the children is in their best interests.

granted to the guardian." *In re E.G.*, 738 N.W.2d 653, 657 (Iowa Ct. App. 2007). The children here are not of an age to consent to their adoption.[8] Their guardian is not missing and has provided legitimate concerns for withdrawing the consent for adoption. *See* Iowa Code § 600.7.

Both the children's legal guardian, DHS, and their GAL, each having the responsibility to promote the children's interests, informed the juvenile court adoption by J.E. would not be in the children's best interests. There is no evidence DHS failed in its guardianship duties in making decisions in the children's best interests. *See E.G.*, 738 N.W.2d at 657; *see also In re E.G.*, 745 N.W.2d 741, 744 (Iowa Ct. App. 2007).

We do not think the circumstances present a situation where "any particular consent shall be unnecessary to the granting of [the] adoption petition. *See* Iowa Code § 600.7(4). Because DHS's consent was necessary for the adoption, consent was withdrawn prior to the adoption hearing, and DHS made its decision in the best interests of the children, we affirm the juvenile court's denial of the grandmother's petitions to adopt.

**AFFIRMED.**

---

[8] At age fourteen, a child may consent to their own adoption. Iowa Code § 600.7(1)(d).